McCARTER, APPELLEE, *v.* CITY OF CINCINNATI ET AL., APPELLANTS.

(No. C-800615—Decided November 25, 1981.)

---

*Messrs. Swain & Hardin* and *Mr. Donald E. Hardin,* for appellee.

*Mr. Richard A. Castellini,* city solicitor, and *Mr. Paul R. Berninger,* for appellants.

I

BLACK, P.J. The principal questions presented in this appeal are (1) whether the Cincinnati City Manager must affirmatively declare the existence of a vacancy in the rank of police captain before the civil service commission can hold a competitive promotional examination for eligible police lieutenants,[1] and (2) whether those provisions of R.C. 124.44 are mandatory that call for the holding of such an examination within sixty days after the occurrence of the vacancy.[2] We hold that the affirmative declaration of a vacancy is unnecessary under the circumstances disclosed by the instant record, and that the requirement of a competitive promotional examination within sixty days is mandatory. We will discuss these principal questions first, beginning with a statement of the facts pertinent to them and deferring three other issues until later. In summary, we find no error in any of the matters raised by the five assignments of error.

The pertinent sentences of R.C. 124.44 read as follows:

*"Whenever a vacancy occurs* in a position above the rank of patrolman in a police department, and there is no eligible list for such rank, the municipal or civil service (*sic*) township civil service commission shall, *within sixty days of such vacancy,* hold a competitive promotional examination. After such examination has been held and an eligible list established,

the commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified within thirty days from the date of such certification." (Emphasis added.)

A

On November 8, 1975, plaintiff-appellee Ray McCarter was a lieutenant in the Cincinnati Police Division and a permanent member of the city's classified civil service. He had enough time in grade to qualify for a promotional examination for the rank of captain. The police division had a complement of police officers established by the city manager, not under any ordinance, but under his general power as the city's appointing authority, including a complement of eighteen police captains. There were eighteen persons holding the rank of captain, each with a specific Job Complement Number ranging from No. 386-1 to No. 386-18 (hereinafter referred to as "Job No. ___").

On November 8, 1975, Captain James Stout retired; as a police captain, he was assigned to Job No. 386-6. There was no eligible list established by the civil service commission for the purpose of making promotions to fill the vacancy in that rank. Written notification of the retirement was made to the city's department of personnel. Further, a written "requisition" (request) dated November 12, 1975, for a captain to fill Job No. 386-6 was forwarded to the director of safety, where it remained in the middle drawer of his desk for three years.

On November 12, 1975, two police

---

[1] The second assignment claims the trial court erred when it decided that a vacancy was created upon the retirement of a police captain despite the absence of a city ordinance establishing a complement for the police division. For the reasons set forth in the opinion, we find no merit in this assignment of error.

[2] The first assignment asserts error in holding that the provisions of R.C. 124.44 for holding a competitive promotional examination "within sixty days of such vacancy" are mandatory. For the reasons set forth in the opinion, we find no merit in this assignment of error.

lieutenants, Jeffrey L. Butler and Ronald Macdonald, jointly requested the police chief to delay the promotional examination until March 10, 1976, so that they both could acquire sufficient time in grade to meet the eligibility requirements for the examination. Butler could not qualify until February 10, 1976, and Macdonald, not until March 10, 1976. Obviously, neither of them was qualified at the time of, or within sixty days after, Captain Stout's retirement.

The promotional examination was not held until March 18, 1976, one hundred thirty-one days after the Stout retirement and fifty-seven days after a second "requisition" had been forwarded to the director of safety for a captain to fill the "vacancy left by the retirement of Captain James Stout." On May 27, 1976, the eligible list for the promotion to captain was approved and published by the civil service commission, to expire in two years, on May 27, 1978. Lieutenant Butler was placed second on the list, Lieutenant Macdonald sixth, and Lieutenant McCarter seventh.

During the two-year life of the eligible list, six vacancies in the rank of captain were filled, Lieutenant Butler receiving assignment as a captain to Captain Stout's Job No. 386-6, and Macdonald to Job No. 386-15 which had been left vacant by the retirement of the captain holding that assignment. The fifth vacancy filled during the two-year period, and the one to which McCarter would have been entitled if only five lieutenants had taken the promotional examination, was filled on April 17, 1977.

Macdonald's promotion was the last one made prior to the normal expiration of the two-year period of the eligible list. On the day before its expiration (that is, May 26, 1978), plaintiff filed his complaint for declaratory judgment and obtained a temporary restraining order prohibiting the termination or alteration of the list, extending its life until further order, and

protecting McCarter's right to promotion thereunder. The temporary restraining order was renewed from time to time and later expanded into a preliminary injunction.

Eventually, the merits of McCarter's claim were presented to the court by stipulations of facts and exhibits. They disclose, among other pertinent facts, that from the Stout retirement through the pendency of the law suit and up to the date of the judgment entry below, one incumbent captain was dismissed, two were promoted and seven retired. Six of these positions were filled by promotions from the eligible list, and three were "abolished" or "eliminated," leaving one position open at the time the court rendered its decision.

The court entered judgment in favor of McCarter, ordering that he be promoted to fill the then unoccupied slot in the rank of captain, with pay and fringe benefits retroactive to April 17, 1977, the day when the fifth vacancy had been filled.

B

The city maintains that the retirement of a police captain does not automatically create a vacancy, and therefore, that the retirement does not mark the beginning of the sixty-day period during which R.C. 124.44 states that a promotional examination will be held. The city claims that under the Home Rule and Civil Service provisions[3] of the Ohio Constitution, the appointing authority can determine whether or when a vacancy occurs, and that in the absence of any ordinance establishing a specific complement of police captains, there is no vacancy upon the retirement of an incumbent captain until the city manager decides

_____

[3] Sections 3 and 7, Article XVIII, and Section 10, Article XV, Ohio Constitution, respectively.

that the position is to be filled.[4] We disagree.

"Vacancy" is not defined in R.C. Chapter 124, and it is not subject to any technical definition or meaning. *State, ex rel. Flex,* v. *Gwin* (1969), 20 Ohio St. 2d 29, 30 [49 O.O.2d 185]. There is no vacancy if council has not appropriated funds to fill a new fire captain's position, even though the position had been newly created by statute. *State, ex rel. Finn,* v. *Garfield Heights* (1973), 34 Ohio St. 2d 5 [63 O.O.2d 3]. We have held that a vacancy exists in spite of an "attrition policy" promulgated by a city manager that states the authorized employee complement is automatically reduced whenever a vacancy occurs,[5] *State, ex rel. Barnes,* v. *Kirsch* (Sept. 19, 1979), Butler App. No. CA-78-07-0064, unreported, and that a vacancy does not occur when a fire captain is put on duty in a temporary position that was not made permanent until a later date, *State, ex rel. Lloyd,* v. *Cincinnati* (Nov. 8, 1976), Hamilton App. No. C-75425, unreported. On the other hand, a vacancy occurred when one of the four positions of police sergeant opened up by reason of the promotion of the incumbent to lieutenant, there being an appropriation of a line item lump sum for police salaries, even though it failed to show a specific express appropriation to fund all four positions of sergeant. *State, ex rel. Pell,* v. *Westlake* (1980), 64 Ohio St. 2d 360 [18 O.O.3d 514].

We have no difficulty in affirming the trial court's conclusion that the retirement of Captain Stout created a vacancy that had to be filled in accordance with R.C. 124.44. Among other conceivable circumstances creating a vacancy, a vacancy in public office occurs when a position that has been established and occupied becomes vacant (by reason of the death, retirement, dismissal, promotion or other permanent absence of the former incumbent). Ballantine's Law Dictionary 1331 (3 Ed. 1969).

The agreed facts and exhibits in this case demonstrate that the position known as Job No. 386-6 had been duly established and occupied as an office in the classified service, as follows: the police division had a complement of officers in several ranks; the complement of captains was eighteen when Captain Stout retired; each and every captain in the complement was assigned a separate Job Number; the complement of captains remained eighteen until May 28, 1976, when Job No. 386-5 was eliminated upon the retirement of Captain Edward Diekman; the complement was further reduced when two other specific positions were eliminated during 1978; those positions which became unoccupied and were not eliminated were filled by promotions from the eligible list; Cap-

---

[4] The city cites the following sentence from *State, ex rel. Lloyd,* v. *Cincinnati* (Nov. 8, 1976), Hamilton App. No. C-75425, unreported:

"The right to determine when a vacancy for promotional purposes exists lies with the appointing authority, not with the Civil Service Commission."

That sentence is quoted out of context, because we were discussing at that point a civil service commission's resolution about when and how it would fill a temporary vacancy occurring while an eligible list exists. We held that whether a vacancy occurs depends on the action of the appointing authority, not the civil service commission, and the commission's resolution was inapposite to the issue *sub judice.*

[5] The basis of our decision was that the statute prevails over a municipal policy. Under the written policy, a vacancy resulted in the position ceasing to exist. Under R.C. 124.48, a vacancy resulted in an appointment of the top man on the eligible list. We held that the statute must control, pursuant to the city's charter, and that there could be no "automatic" attrition.

tain Stout's assignment was to Job No. 386-6; and Butler was assigned that Job Number on June 3, 1976, being the second promotion made from the 1976 eligible list. The position was clearly and unquestionably "established" by the city manager acting within the powers conferred on him by the City Charter. The absence of an ordinance fixing the number of captains in the police division is immaterial. Once established, the position continued in existence until duly abolished or eliminated.

We hold that a vacancy in that position was created by the retirement of the incumbent during the continuance of the position, without the necessity of any further action whatsoever. The vacancy occurred even though the city manager as appointing authority did not "declare" it to be in existence. There is no requirement for certification of a vacancy in the police department under R.C. 124.44, as there is under R.C. 124.48 in the case of a vacancy in the fire department.

We believe that the documented establishment of the police division under the city manager, so far as it is revealed by the record *sub judice,* provides the sort of stable framework of public offices upon which a workable civil service system may be constructed. This basic framework aids in avoiding the traditional spoils system characterizing Nineteenth Century politics and in providing a method of fair employee selection and promotion on the basis of merit and fitness. At the same time, a rational flexibility is furnished by allowing for the elimination or addition of public offices by documented changes.

C

The city also maintains that the provisions of R.C. 124.44 calling for a promotional examination within sixty days after a vacancy when there is no eligible list, are directory only and not mandatory, thus allowing the examination to be held as long as one hundred thirty-one days after a vacancy is created by the incumbent's retirement, as in the present case. We disagree. We hold the requirement is mandatory.

The word "shall" is used twelve times in R.C. 124.44 as well as in the sentence we are construing. This repeated use in and of itself suggests that the legislature intended to create a mandatory obligation. *Cleveland Ry. Co.* v. *Brescia* (1919), 100 Ohio St. 267. Further, the content and design of R.C. 124.44 throughout is to create clear and definite rights and mandatory duties. The word "shall" in a statute must be construed as mandatory unless a contrary intent is clearly and unequivocally expressed in the legislative language. *State, ex rel. Ewing,* v. *Without a Stitch* (1974), 37 Ohio St. 2d 95, 103 [66 O.O.2d 223]. See, also, *State* v. *Herbert* (1976), 49 Ohio St. 2d 88, 91-92 [3 O.O.3d 51].

The civil service commission must, under R.C. 124.44, hold a competitive promotional examination within sixty days after the occurrence of a vacancy in a position above the rank of patrolman in a police department, when there is no eligible list for such rank.[6]

_____

[6] We are aware that in *Jenkins* v. *Lorain Civil Service Comm.* (May 27, 1981), Lorain App. No. 3150, unreported, the Ninth Appellate District upheld an eligible list for assistant fire chief when the promotional examination under R.C. 124.48 had been held one hundred fifty-eight days after the vacancy was certified by the appointing authority, stating that the sixty-day requirement was directory only. We respectfully disagree. We might well have reached the same result that our brothers of the Ninth District did, because the delay was caused by "lack of staff and funding," the type of impossibility that may be said to excuse strict performance even of a mandatory duty. Compare *State, ex rel. Finn,* v. *Garfield Heights, supra,* wherein failure to appropriate funds for a newly created position was the basis of holding that no vacancy existed in the position.

## II

The third assignment asserts error in extending the eligible list beyond its statutory expiration date and in ordering McCarter's promotion to a position that did not become vacant until after the normal expiration of the list. We believe this claim is based on a misconception of the remedy sought by McCarter and the procedure used by the court to protect his claims.

McCarter asked for a declaratory judgment about his right to promotion and other relief to which he might be entitled, without seeking either to enjoin any and all promotions to police captain (which would tend to impede the machinery of government until he was redressed) or to unseat those who had been promoted ahead of him. The original temporary restraining order prevented only those actions by the city, its employees and agencies that would terminate or alter his right to promotion under the then existing eligible list. McCarter asked for and received orders extending the life of that list. In the meantime, the city was free to fill vacancies in the rank of captain, to carry on its police function undeterred by the litigation, and even to schedule and hold another competitive promotional examination for captain in 1980. As noted above, ten vacancies occurred in the office of captain during the litigation (including Stout's), three positions were eliminated and six were filled, leaving one open. All of this was to the city's advantage, and the city made no objection to the procedure used by McCarter, even though it opposed the merits of his claim. In the meantime, the officers who joined the eligible list late, Butler and Macdonald, were found by the trial court to have acted in good faith, to have done all that was required of them and to have completed satisfactorily the probationary periods in their new assignments as captains.

Under these circumstances, the city was not in any way prejudiced by the court's orders continuing the life of the eligibility list.

Further, the final judgment placed him in a captain's position that was vacant at the time. We do not believe it is significant under the circumstances that the position did not open up until after the expiration of the normal two-year life of the eligible list, or that McCarter's pay and fringe benefits were made retroactive to a time before the particular vacancy occurred. We find no prejudicial error in the remedy fashioned by the trial court under the peculiar circumstances of this case.

## III

In the last two assignments, the city claims that McCarter's suit should have been dismissed because he failed to join Butler and Macdonald as necessary parties, and because he was guilty of laches. These claimed errors were not called to the attention of the trial court, according to our review of the entire record. They were, therefore, waived. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]; *Manes* v. *Espy* (Oct. 31, 1979), Hamilton App. No. C-77724, unreported; 4 Ohio Jurisprudence 3d 298, Appellate Review, Section 137.

Finding no merit in any assignment of error, we affirm.

*Judgment affirmed.*

SHANNON and PALMER, JJ., concur.