VOGELER, APPELLANT, *v.* CITY OF CINCINNATI ET AL., APPELLEES.

(No. C-830560—Decided April 11, 1984.)

*Messrs. Metzger, Phillipps & Nichols* and *Mr. A. David Nichols,* for appellant.

*Mr. Richard A. Castellini,* city solicitor, *Mr. Timothy M. Ruttle* and *Ms. M. Kathleen Robbins,* for appellees city of Cincinnati, Sylvester Murray, Ann DeGroot and Civil Service Commission.

SHANNON, J. The appeal in the case *sub judice* is taken from the order of the court of common pleas denying a request for declaratory and injunctive relief on behalf of an officer of the fire division of the city of Cincinnati who claimed that he had been denied a promotion to the rank of district fire chief in violation of the state civil service laws. In the three assignments of error given to us for review, the issues are: (1) whether the resignation of an officer holding the rank of assistant fire chief created a vacant position in that rank that was never abolished in accordance with law; (2) whether the vacancy required an extension of the life of those eligibility lists then in effect for officers seeking promotions in all lesser ranks until the vacancy was filled; and (3) whether the complaining officer presented evidence at the hearing on his request for declaratory and injunctive relief sufficient to demonstrate irreparable harm as a predicate for an order compelling the city to promote him within the ranks of the fire department.

At the heart of the dispute between the parties is an employment policy conceived by the city's office of research, evaluation and budget and referred to in the course of these proceedings as "double-filling." In practice, the term is used to describe a situation in which a single position normally held by only one individual is occupied by two employees at the same time. As the policy was

originally intended to operate, double-filling would occur when an individual holding a particular position in rank was, for whatever reason, temporarily unavailable to perform his work or absent from duty; during the period of absence or disability, an employee from a lower position in rank would be elevated to fill the position already occupied, as the circumstances dictated, without any permanent change in the employment hierarchy. Over time, however, the city administration began to use double-filling as a budgetary device in an effort to save costs by eliminating or abolishing established positions in rank. As a result, two individuals who formerly occupied separate positions in rank were treated, under the policy of double-filling, as if they shared the same position.

According to the record, the active ranks within the Cincinnati Fire Department are, in descending order, those of chief, assistant chief, district fire chief, captain, lieutenant, fire fighter, and fire recruit. The appellant, Donald J. Vogeler, has served as an officer in the department at the rank of captain for a number of years, and his name currently appears first on an eligibility list for promotion to the rank of district fire chief pursuant to the terms of an order that has prolonged the life of the list pending the resolution of this appeal.

The series of events that resulted in Vogeler's claim that he was denied a promotion in violation of law began on August 26, 1982, when various members of the city administration, including the chief of the fire department, devised a plan to abolish one of the five existing positions in the rank of assistant fire chief. On that date, one Jack Phelps, the assistant chief with the least seniority in grade, was demoted to the next lower rank of district fire chief, with the demotion to take effect on August 28, 1982. Coincident with the order of demotion, two city officials signed a document purporting to "delete" one of the positions

in the rank of assistant fire chief as of August 29, 1982.

Because there were no openings in the rank of district fire chief at the time his demotion took effect, Phelps was assigned to double-fill a position already held by one John Pfaff. The ultimate effect of the demotion on Phelps proved, however, to be quite attenuated. Two days later, on August 30, 1982, he was promoted to his former rank of assistant fire chief pursuant to an order that authorized the double-filling of a position then occupied by one Robert Rathman. The device of double-filling was necessary to facilitate the promotion because there were, in the city's view, only four available positions in the rank of assistant fire chief as a result of the deletion of the position held by Phelps prior to his short-lived demotion. When asked at the hearing in the court below to identify the purpose of the maneuvering pursuant to which Phelps was immediately reinstalled in a rank from which he had presumably been demoted, the chief of the fire department responded that the demotion was necessary to achieve the city's goal of abolishing one position in the rank of assistant fire chief, and that the department did not want Phelps to suffer a reduction in retirement benefits as a result of a move that was made only for budgetary reasons.

Only two days after he was assigned to double-fill the position held by Rathman, Phelps resigned from the fire department at the rank of assistant chief due to a physical disability. At the time of his resignation, Captain Vogeler stood first in line for promotion to the rank of district fire chief pursuant to an eligibility list that had been in effect since April 15, 1981. Vogeler was not, however, offered a promotion because all the positions in the rank of district fire chief were occupied, and none of the officers in that rank was elevated to the position of assistant fire chief as a result of Phelps' resignation. A promotion in

rank to assistant chief would have left an opening for Vogeler in the rank of district fire chief at that time, but such a promotion was barred in the department's estimation because it considered all positions in the rank of assistant chief to be occupied by virtue of the deletion of the fifth position and the double-filling of Phelps in the position already held by Rathman.

Immediately prior to the institution of the within action in the court of common pleas, it is undisputed that a vacancy in the rank of assistant chief was created when, on March 1, 1983, one Lawrence Schmolt retired from a position that had not been double-filled. Because there was no eligibility list then in effect for officers holding the next lower rank of district fire chief, competitive examinations were given to determine which officer would be entitled to fill the position by promotion. Believing that the eligibility list on which Vogeler's name stood first had lapsed pursuant to R.C. 124.46, the city thereafter conducted a second set of competitive examinations to determine which officer in the rank of captain would be elevated to fill the separate vacancy created by the impending promotion of one of the district fire chiefs to the rank of assistant chief. By order of this court, however, the city has been restrained from announcing the test results or from promoting anyone other than Vogeler to the rank of district fire chief pending the resolution of the issues raised in this appeal.

Vogeler's request for declaratory and injunctive relief in the court below was predicated upon the theory that the retirement of either Phelps or Schmolt created a vacancy in the rank of assistant chief that the department was required to fill in accordance with R.C. 124.48[1] by promoting an officer from the next lower rank of district fire chief.

If the procedure mandated by the state civil service laws had been followed by the department, Vogeler asserted, he would have been entitled to fill the resulting vacancy in the rank of district fire chief pursuant to R.C. 124.46 as the officer with the highest position on the existing eligibility list for that rank.

After considering the testimony and the exhibits presented by the parties in the course of an evidentiary hearing, the judge denied Vogeler's various requests for relief, incorporating the terms of the final judgment entry in a series of enumerated findings to support his legal conclusions. Insofar as they are relevant to the issues raised in this appeal, the findings included the following: (1) that the city had "followed the law as outlined in Section 124.37, Revised Code," by demoting Assistant Chief Phelps to the rank of district fire chief and concomitantly abolishing one of the five positions in the rank of assistant chief; (2) that the city thereafter promoted Phelps to his former rank "for humanitarian reasons" by double-filling one of the four remaining positions in the rank of assistant chief; and (3) that the cumulative effect of the city's actions abolished, rather than created a vacancy in, a position in the rank of assistant fire chief, and that the abolished position "was not reestablished by the double-filling procedure."

In the first of his three assignments of error, which in our estimation poses the pivotal issue in this appeal, Vogeler challenges the judge's finding that the city's "scheme to demote and re-promote" Phelps effectively abolished one of the five positions in the rank of assistant chief. Relying upon a prior decision of this court in *State, ex rel. Barnes,* v. *Kirsch* (Sept. 19, 1979), Butler App. No. CA-78-07-0064, unreported, he reasons that the city's attempt to abolish the position in rank by demoting Phelps should have been regarded as a nullity because its effect was in contravention of those provisions

---

[1] The relevant provisions of the cited statute are set forth, *infra.*

of R.C. 124.48 governing the filling of vacancies in the promoted ranks of a fire department.

In *Barnes, supra,* we examined the validity and effect of an attrition policy adopted by a municipality authorizing the automatic reduction of an employee complement whenever a vacancy occurred in a position. According to the terms of the decision, the policy was applied to deny a promotion to an officer standing first on an eligibility list when a fire captain in the next higher rank retired from service. Rejecting the city's argument that the retired captain's position had been automatically abolished under the attrition policy, we held that the terms of the policy specifically predicating the abolition of a position upon a vacancy in rank were in direct conflict with that part of R.C. 124.48 requiring an appointing authority to take immediate action to fill any vacancy in rank by promotion.[2]

Given the peculiar factual posture of *Barnes, supra,* we are not convinced that our treatment of the attrition policy there at issue should now control what we perceive to be the central issue posed in the case *sub judice, i.e.,* whether the city's policy of double-filling was an acceptable device to achieve the abolition of a position in the fire department's rank of assistant chief. This is not to say, however, that the case is without any

value in our present analysis. To the same extent that we found in *Barnes* that the city was bound by its charter to follow the state civil service laws, we find in the case *sub judice* that Cincinnati was obligated to act in accordance with the applicable state laws whenever it made a personnel change within the fire department. *Barnes, supra,* at 3; Section 3, Article 11, Charter of the city of Cincinnati.[3]

With this in mind, we turn to an analysis of whether the city's use of double-filling in connection with the demotion and subsequent promotion of Phelps effectively abolished one position in the rank of assistant chief. For the following reasons, we hold that the procedures employed by the city were in violation of law, and that the position was never properly abolished. Our starting point is the statute that governs demotions and reductions in force in police and fire departments. R.C. 124.37 reads, in relevant part, as follows:

"When a position above the rank of patrolman in the police department and above the rank of regular fireman in the fire department is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until

---

[2] The basis for the holding is set forth in the decision as follows:

"Appellants contend that R.C. 124.48 has no application since there was never a vacancy. Appellants' argument is that the moment Barnes retired, the captaincy position ceased to exist by virtue of the attrition policy. Although we recognize that this is what the appellants sought to accomplish, the fact is that the attrition policy by its own words terminated positions 'whenever a vacancy occurs.' In other words the position was not abolished until it was vacant. This conflicts with R.C. 124.48 which says that 'whenever a vacancy occurs,' the highest per-

son on the eligible list *shall be* appointed. In other words the same event, to wit: a vacancy, triggers contradictory results. Under the 'attrition policy' a vacancy results in the position ceasing to exist. Under R.C. 124.48 a vacancy results in an appointment of the top man on the eligible list. Under the city charter, the statute must control." *Barnes, supra,* at 3.

[3] The charter provides that the city shall have "no power to modify the provisions of the laws of the state of Ohio now or hereafter in effect relating to the civil service and civil service commissions," except as authorized by its terms.

the youngest person in point of service has been reached, who shall be laid off."

In our judgment, the statute clearly sets forth the procedures a city must follow where, as here, an officer holding an established position in rank in the fire department is demoted as part of a plan to abolish the position he formerly occupied. To achieve the desired effect of abolishing the position, the initial demotion must be accompanied by a series of additional demotions in all lesser ranks and must ultimately result in the layoff of the junior member of the department with the least time in service.

It is apparent from our review of the record, however, that the statutory procedure requiring a series of step demotions in rank was not followed in the case *sub judice*. Instead of carrying through with the additional demotions that should have been triggered by Phelps' reduction in rank on August 28, 1982, the department utilized the policy of double-filling to place Phelps in the rank of district fire chief by sharing a position already occupied by another officer. In the space of a weekend, the policy was again invoked to promote Phelps to his former rank in a shared position with Assistant Chief Robert Rathman.

We have carefully reviewed the applicable provisions of the Revised Code in an attempt to find some statutory basis for the device of double-filling, and our search has failed to unearth even an implicit endorsement of the procedure. Not only are we persuaded that there is no authority in law for double-filling, but we are also convinced that the effect of the policy may, in practice, run directly afoul of those provisions of R.C. 124.37, *supra,* governing reductions in force in a fire department. For example, to give judicial credence to the policy under the circumstances of the instant case would, in our estimation, allow a city to avoid, in the guise of double-filling, the series of step demotions contemplated by the statute whenever it chose to abolish a position by demoting an officer in rank.

Although we do not question the general authority of a city to abolish a position within the promoted ranks of its fire department, we cannot give credit to a process that permits an otherwise legitimate end to be achieved by means that are contrary to the established civil service laws of this state. We hold, therefore, that the city's use of double-filling in the instant case to demote Phelps amounted to nothing more than an unauthorized budgetary contrivance in violation of state law, and that the resulting attempt to abolish one of the positions in the rank of assistant chief was, under the circumstances, a nullity. It follows, then, that when Phelps was promoted to his former rank, he returned, in effect, to the fifth position in that rank, and that a vacancy in that position was thereafter created upon his retirement on September 1, 1982. See *McCarter* v. *Cincinnati* (1981), 3 Ohio App. 3d 244.[4]

Having determined that a vacancy existed in the rank of assistant chief as of September 1, 1982, we must now determine what effect, if any, the vacancy should have had on Vogeler as an officer in a rank twice-removed from that of assistant chief. It is here that the second and third assignments of error come into play. As we noted in *Barnes* and *McCarter, supra,* a vacancy in rank must generally be filled by the promotion of an officer in the next lower rank. The applicable procedure is set forth in R.C. 124.48 as follows:

"Whenever a vacancy occurs in a promoted rank in a fire department and

---

[4] We held in *McCarter* that a vacancy occurs automatically when an officer retires from an established position in rank, without the necessity of a formal declaration, certification or other affirmative action by the city manager. 3 Ohio App. 3d at 246-247.

no eligible list for such rank exists, the appointing authority shall certify the fact to the civil service commission, and the civil service commission shall within sixty days of such vacancy conduct a competitive promotional examination. After such examination has been held, an eligible list shall be established within twenty days of the final date, of the revised rating key or answer inspection date and the civil service commission shall certify to the appointing authority the name of the person receiving the highest grade. Upon such certification, the appointing authority shall appoint the person so certified within ten days.

"When an eligible list is in existence and a vacancy occurs in a position for which the list was established, the appointing authority shall certify the fact to the civil service commission. The person standing highest on such list shall be certified to the appointing authority, and such person shall be appointed within ten days."

In the instant case, it is clear from the testimony presented in the court below that there was no eligibility list in effect for officers holding the next lower rank of district fire chief at the time Phelps retired from the rank of assistant chief. Under the statute, therefore, competitive examinations should have been given within sixty days of the date of the retirement, an eligibility list should have been established no later than twenty days after the compilation of the test results, and one of the district fire chiefs should have been promoted to the rank of assistant chief within ten days of the certification of the test results to the civil service commission. In sum, a promotion from the rank of district fire chief should have taken effect approximately ninety days after Phelps' retirement and, certainly, no later than a date in the month of December 1982.

If the promotion to fill the vacancy created by Phelps' retirement had occurred in accordance with law, a second vacancy would have been created in the rank of district fire chief before the end of the calendar year of 1982, and that vacancy would have required a promotion of one of the officers in the next lower rank of captain in accordance with the procedures set forth in R.C. 124.48.

According to the record, Vogeler stood first in line for promotion to the rank of district fire chief pursuant to an eligibility list that became effective on April 15, 1981. It is our conclusion, therefore, that he would have been entitled to the promotion to fill the vacancy in the rank of district fire chief if the city had followed seriatim the procedures required by law upon Phelps' retirement, pursuant to the terms of R.C. 124.46, which reads, in full, as follows:

"The names of the examinees shall be placed on the eligible list in accordance with their grades; the one receiving the highest grade shall be placed first on the list. In the event two or more examinees receive the same grade, seniority in the fire department service shall determine the order of their names. The person having the highest position on the list shall be appointed in the case of a vacancy. *Eligible lists established as provided in this section shall continue for two years. In the event a vacancy occurs prior to the expiration of the two year period, the list shall continue for the purpose of filling such vacancy until the vacancy has been filled.*

"Where an eligible list exists and a vacancy occurs which may be filled from such eligible list, the vacancy shall be filled within a period of not more than ten days from the date of such vacancy." (Emphasis ours.)

In view of the foregoing analysis, we are convinced that the following findings and conclusions should have been drawn from the evidence presented in the court below: (1) that the city's use of double-filling was in violation of state law, particularly R.C. 124.37; (2) that one position in the rank of assistant

chief was not properly abolished as a result of the demotion of Assistant Chief Phelps; (3) that Phelps returned to the fifth established position in the rank of assistant chief when he was promoted two days after his demotion to the rank of district fire chief; (4) that a vacancy was created in the rank of assistant chief upon Phelps' retirement; (5) that the filling of the vacancy in accordance with law by a promotion from the next lower rank should have ultimately resulted in a vacancy in the rank of district fire chief; that Vogeler should have been promoted to fill the vacancy as the officer standing first on an eligibility list that remained in effect by force of law pursuant to R.C. 124.46; and (6) that Vogeler suffered irreparable harm as a result of the department's failure to promote him in accordance with law. It is our conclusion, therefore, that the three assignments of error given to us in this appeal are well-taken.[5]

The judgment of the court of common pleas is hereby reversed, and the instant cause is remanded to that court for the entry of an order in accordance with the terms of this decision providing Vogeler with the promotion to which he was entitled, and for such further proceedings as may be necessary to insure the preservation of those rights that should have accrued had the promotion taken effect in accordance with law.

*Judgment reversed and cause remanded.*

KEEFE, P.J., and KLUSMEIER, J., concur.

---

[5] The second assignment of error also addresses the impact of Assistant Chief Lawrence Schmolt's retirement on Vogeler's right to promotion. We are validating this assignment only to the extent that its reasoning applies to the prior retirement of Assistant Chief Phelps.