[Cite as *State ex rel. Internatl. Assn. of Fire Fighters v. Barbish*, 2022-Ohio-2201.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel.<br>THE INTERNATIONAL ASSOCIATION<br>OF FIRE FIGHTERS, LOCAL 1536,<br>AFL-CIO,<br><br>　　　　　　Relator-Appellant,<br><br>　　　　- v -<br><br>JOHN BARBISH, IN HIS OFFICIAL<br>CAPACITY AS MAYOR AND<br>DIRECTOR OF PUBLIC SAFETY, et al.,<br><br>　　　　　　Respondents-Appellees,<br><br>JAMES G. POWERS,<br><br>　　　　　　Intervenor-Appellee. | **CASE NO. 2021-L-103**<br><br>Civil Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2020 CV 001168 |

**O P I N I O N**

Decided: June 27, 2022
Judgment: Affirmed

*Joseph W. Diemert, Jr.*, *Thomas M. Hanculak*, and *Mark V. Guidetti*, Diemert & Associates Co., LPA, 1360 SOM Center Road, Cleveland, OH 44124 (For Relator-Appellant).

*John D. Latchney*, Hanna Campbell & Powell, LLP, 3737 Embassy Parkway, Suite 100, Akron, OH 44333 (For Respondents-Appellees).

*Alexander L. Ewing* and *Charles B. Galvin*, Frost Brown Todd LLC, 9277 Centre Pointe Drive, Suite 300, West Chester, OH 45069, and *Stuart G. Torch*, Elfvin, Klingshirn, Royer & Torch, LLC, 4700 Rockside Road, Suite 530, Independence, OH 44131 (For Intervenor-Appellee).

MATT LYNCH, J.

{¶1} Relator-appellant, International Association of Fire Fighters, Local 1536, appeals from the judgments of the Lake County Court of Common Pleas, granting partial judgment on the pleadings and summary judgment in favor of respondents-appellees, John Barbish, the City of Wickliffe Civil Service Commission, and the City of Wickliffe, and intervenor-appellee, James Powers. For the following reasons, we affirm the decision of the lower court.

{¶2} On September 21, 2020, Local 1536 filed a Complaint for Declaratory Judgment, Permanent Injunction, and Petition for Writ of Mandamus against Barbish, the City of Wickliffe Civil Service Commission, and the City of Wickliffe, which was subsequently amended. The Complaint alleged that the Wickliffe Fire Chief, James Powers, retired on January 6, 2020, and was rehired the next day by Mayor Barbish. Local 1536 sent letters to the city alleging this violated civil service laws requiring that Powers' vacancy be filled through a competitive promotional examination process. Local 1536 contended that the failure to follow this process deprived eligible fire captains from being considered for the position. It requested a declaratory judgment that the vacancy created when Powers retired and any resulting vacancies must be filled by a competitive examination process in compliance with the law and that Powers does not properly hold the position of fire chief. It sought a permanent injunction prohibiting non-competitive means for filling vacancies within the Division of Fire. It also requested a writ of mandamus ordering the mayor to declare a vacancy, administer an examination, and make an appointment to fill the vacancy.

{¶3} Barbish and Wickliffe filed an Answer on October 5, 2020. On November 13, 2020, Powers filed a Motion to Intervene, which was granted by the trial court.

{¶4} On February 5, 2021, Barbish and Wickliffe filed a Motion for Partial Judgment

2

on the Pleadings, seeking dismissal of the Petition for Writ of Mandamus due to the existence of an adequate remedy at law, and dismissal of the claims for punitive damages and attorney's fees.

{¶5} The parties filed joint stipulations of fact on February 26, 2021. The stipulations established, in pertinent part, the following facts:

{¶6} The Division of Fire is part of the Wickliffe Department of Public Safety, which includes a Chief of Fire, four captains, three lieutenants and various grades of firefighters. The Chief of Fire controls the day-to-day administration of the Division of Fire. These employees, including the chief, are members of the competitive classified civil service who are subject to the civil service competitive examination process for appointments and promotions. The chief is not a "bargaining unit" employee subject to the collective bargaining agreement between the city and Local 1536. The collective bargaining agreement has a "management rights clause" which states that the employer retains the right to "determine the basis for selection, retention and promotion of employees to or for positions not within the bargaining unit established" by the bargaining agreement.

{¶7} Powers retired from his employment as the Chief of Fire on January 6, 2020. Mayor Barbish and the city submitted paperwork to the Ohio Police and Fire Pension Fund verifying that Powers retired on January 6 and was rehired by Barbish on January 7, 2020. He was sworn in by Barbish on January 7. The decision to allow Powers "to retire and be immediately rehired was not made based on any alleged or actual delinquency or misconduct on the part of Mr. Powers; not due to any alleged or actual injury or * * * disability of Mr. Powers." On January 6, 2020, Barbish issued a memorandum to the city's finance director, directing her to assist Powers with his pension and also directing Powers receive a

3

retirement package with sick time at his pre-retirement rate, totaling over $50,000, that all benefits and compensation will remain the same as prior to his retirement, and setting a new salary of 10 percent less than his 2020 salary at the rate of $97,965. On February 10, 2020, Barbish presented an emergency ordinance to city council which authorized the finance director to compensate the person performing duties of fire chief at the rate of $97,965 per year. At the council meeting, Barbish represented that Powers' retirement and rehiring was "an administrative change" and Powers "did not vacate the position." The ordinance was adopted. No process was initiated under the civil service rules as is required when there is a vacancy for the Fire Chief position. Local 1536 sent a February 7, 2020 e-mail to the Civil Service Commission expressing its belief there was a vacancy, with which the Commission disagreed. Local 1536 sent a letter to the Law Director on May 18, 2020, stating that the vacancy should be filled via a competitive promotional examination and a separate September 8 letter requesting prosecution of Barbish for refusing to declare a vacancy. No such action was taken. Powers remained in the Fire Chief position as of the date of the stipulations.

{¶8} The parties also stipulated that approximately four captains employed by the Wickliffe Fire Department are eligible to take the promotional exam and approximately three lieutenants would be eligible to take the exam to replace a promoted captain.

{¶9} On April 5, 2021, Barbish and the city filed a Motion for Summary Judgment. It argued, inter alia, that there was a "contractual right to self-determine" the basis for retaining Powers as chief and that there was not a true opening or vacancy to fill. Powers' Motion for Summary Judgment similarly alleged a lack of a vacancy given his retirement and rehire on the next day. On the same date, Local 1536 filed its Motion for Summary

4

Case No. 2021-L-103

Judgment. It alleged it was entitled to summary judgment since all promotions within fire service and a vacancy in the position of fire chief must be effectuated through competitive examination.

{¶10} In a June 14, 2021 Opinion and Journal Entry, the lower court granted the request for partial judgment on the pleadings as to punitive damages and attorney's fees, finding these were not recoverable. It denied the request on the claim for writ of mandamus, finding it to be more appropriately addressed through the motion for summary judgment.

{¶11} The court issued an August 26, 2021 Opinion and Judgment Entry granting appellees' motions for summary judgment and denying Local 1536's motion. It concluded that there had been no vacancy in the fire chief position and, thus, the requirements to fill such vacancy were never triggered.

{¶12} Local 1536 timely appeals and raises the following assignments of error:

{¶13} "[1.] The Trial Court erred in granting Appellee's Motion for Summary Judgment and for denying Appellant's Motion for Summary Judgment because no question of material fact existed and Appellant was entitled to judgment as a matter of law.

{¶14} "[2.] The Trial Court erred in granting Appellees' Motion for Partial Judgment on the Pleadings denying recovery of punitive damages.

{¶15} "[3.] The Trial Court Erred in granting Appellees' Motion for Partial Judgement on the Pleadings denying recovery of attorney fees."

{¶16} In its first assignment of error, Local 1536 argues that the lower court erred in its ruling on summary judgment because it failed to properly apply the law as to whether there was a vacancy that was subject to the competitive promotion process.

{¶17} Pursuant to Civil Rule 56(C), summary judgment is proper when (1)

5

the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶18} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶19} As an initial matter, we note that Barbish and Wickliffe argue in their appellees' brief that Local 1536 lacked standing to bring a mandamus claim on behalf of the potentially aggrieved firefighters who may be entitled to a promotion. The question of standing involves whether the party who brought the claim "has alleged such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999).

{¶20} In support of their argument that there is a lack of standing to pursue a mandamus action, appellees cite *State ex rel. Internatl. Assn. of Fire Fighters, Local 381 v. Findlay*, 3d Dist. Hancock No. 5-05-21, 2006-Ohio-1774. In that case, the court emphasized the limited nature of standing in a mandamus action and noted that "when mandamus is sought 'merely for the protection of private rights, the relator must show some personal or

6

special interest in the subject matter, since he is regarded as the real party in interest and his rights must clearly appear.'" (Citation omitted.) *Id.* at ¶ 18. It held that where the union's interest was in the promotion of a fire captain and the position had been filled by another qualified individual, there was no public interest demonstrated and the union had no personal interest that could be protected, thus demonstrating no standing for the purposes of mandamus. *Id.* at ¶ 19-20. We note, however, that it observed that there may be a public interest involved if the position were vacant and was not filled by another qualified candidate and also emphasized that the union was protecting the interest of one union member at the expense of another. *Id.* at ¶ 19 and 21. Here, Local 1536 is arguing that the position was vacant and that multiple union members are qualified, which may, as the foregoing case held, relate to a public interest which could be addressed through a mandamus action. Further, as the court held, the interest of protecting the union's members "is sufficiently protected through the use of a declaratory judgment action." *Id.* at ¶ 20.[1] Such action is also maintained in the present matter. Here, since resolution of the merits is necessary to determine whether declaratory judgment is proper and the determination of whether there was a vacancy is relevant to standing under the mandamus action, we must proceed to address the merits of the claim.

{¶21} Pursuant to R.C. 124.48:

> Whenever a vacancy occurs in a promoted rank in a fire department and no eligible list for that rank exists, the appointing authority shall certify the fact to the civil service commission. The civil service commission, within sixty days of the vacancy, shall conduct a competitive promotional examination. After the examination has been

---

1. We note that Powers argues that there is a lack of standing in relation to the declaratory judgment claim as well, arguing that Local 1536 does not have the right to bargain over the terms and conditions of a non-bargaining unit employee, i.e., Powers. This argument, however, fails to recognize that Local 1536 was representing the interests of those who would be eligible for the position if in fact a vacancy was created and there was an entitlement to sit for the competitive promotional examination.

7

held, an eligible list shall be established, and the civil service commission shall certify to the appointing authority the name of the person on the list receiving the highest grade. Upon the certification, the appointing authority shall appoint the person so certified within ten days.

{¶22} There is no dispute between the parties that, if there is a vacancy for the position of Fire Chief, the appropriate procedure is following the process for a competitive promotional examination and eligibility list as set forth in R.C. 124.48. The critical question here is whether there was a "vacancy" in the Fire Chief position to trigger these requirements.

{¶23} "'Vacancy' is not defined in either R.C. Chapter 124 or the Ohio Administrative Code, and it is not subject to any technical definition." *State ex rel. Hrelec v. Campbell*, 146 Ohio App.3d 112, 118-119, 765 N.E.2d 402 (7th Dist.2001). It has been held that a vacancy for the purposes of this chapter "occurs 'when a position that has been established and occupied becomes vacant by reason of the death, retirement, dismissal, promotion, or other permanent absence of the former incumbent.'" *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Warren,* 2019-Ohio-5046, 150 N.E.3d 451, ¶ 29 (11th Dist.), quoting *State ex rel. Mylott v. McKelvey*, 151 Ohio App.3d 673, 2003-Ohio-328, 785 N.E.2d 759, ¶ 12 (7th Dist.).

{¶24} Local 1536 emphasizes the inclusion of the term "retirement" in the foregoing definition in support of an argument that a vacancy occurred. However, the list of justifications for a finding of vacancy states that a vacancy occurs when there is a "death, retirement, dismissal, promotion, or *other permanent absence* of the former incumbent." Use of this language demonstrates that each of the foregoing terms is intended to be a permanent departure from the office held by the incumbent. *See State ex rel. Mathews v. Alliance*, 5th Dist. Stark No. 1995CA00160, 1995 WL 768511, *2 (Oct. 31, 1995), citing

8

*McCarter v. Cincinnati*, 3 Ohio App.3d 244, 247, 444 N.E.2d 1053 (1st Dist.1981) ("to create a vacancy pursuant to R.C. 124.44, the absence from the position must be permanent"). In the present matter, there was no such departure, since there is no dispute that Powers retired but was reappointed to his office the next day. This is not the typical departure that creates a permanent absence from the office. Temporary separations from a position where it is evident the individual was not intending to leave that position have not been found to create a vacancy. *See Mathews* at *1-2 (a vacancy was not created where a police lieutenant separated from work, intending to use disability and sick time while pursuing a disability pension since he did not express a desire to leave work until a decision on his disability pension was made, the absence was not permanent, and he "could have resigned or returned to duty following the decision concerning his pension disability"); *Hrelec* at 120 (a vacancy was not created in the office of a fire chief while he was unable to work due to a medical condition).

{¶25} To the extent that Local 1536 argues the trial court's conclusion on whether a vacancy existed is "particularly egregious given the fact that the Trial Court itself has previously opined on such as scenario" and reached a different conclusion, we find this has no bearing on our decision. The trial court's decisions in other cases are not binding authority on this court and do not impact our de novo review of this matter.

{¶26} We also recognize the appellees' argument that both the management rights clause in the collective bargaining agreement and R.C. 4117.08 allow the employer to make determinations regarding retention of employees in positions outside of the bargaining unit, such as the fire chief. While this alone does not circumvent the obligation to follow civil service requirements where otherwise necessitated by law, given that we find there was no

9

vacancy warranting the application of R.C. 124.48, there is no applicable legal precedent provided demonstrating the decision to retain Powers was outside of appellees' authority.

{¶27} Local 1536 also argues that R.C. 124.50 applies and prevented Powers from being rehired or reinstated to his position of fire chief after retiring. R.C. 124.50 provides:

> Any person holding an office or position under the classified service in a fire department * * *, who resigns therefrom, may be reinstated to the rank of firefighter * * *, upon the filing of a written application for reinstatement * * *, and upon passing a physical examination disclosing that the person is physically fit to perform the duties of the office of firefighter * * *, the application for reinstatement shall be filed within one year from the date of resignation. Any person reinstated pursuant to the authority of this paragraph shall not receive credit for seniority earned prior to resignation and reinstatement, and shall not be entitled to reinstatement to a position above the rank of regular firefighter * * *, regardless of the position the person may have held at the time of resignation.

Local 1536 argues that, pursuant to this statute, Powers could not have been reinstated to his position as chief and could only be reinstated as a regular firefighter.

{¶28} R.C. 124.50 provides that a person who "resigns" from his or her office or position can only be reinstated to the rank of a regular firefighter. In this context, it has been held that "[a]n act of resignation requires both the intent to resign and an act of relinquishment." *Dore v. Miller*, 9th Dist. Lorain No. 03CA008416, 2004-Ohio-4870, ¶ 12, citing *State ex rel. Dwyer v. Middletown*, 52 Ohio App.3d 87, 92, 557 N.E.2d 788 (12th Dist.1988) (the definition of resignation "suggests an effective resignation requires two distinct components: first, an intention to resign, and, second, an act of relinquishment"). It has similarly been defined as to "give up deliberately." *State ex rel. Richard v. Springfield*, 48 Ohio St.3d 65, 66, 549 N.E.2d 164 (1990), citing *Webster's Ninth New Collegiate Dictionary* (1984) 1003. Resignation has been viewed in the context of R.C. 124.50 as a

Case No. 2021-L-103

"more radical change in circumstances" than a separation from employment, "connoting the relinquishment of current as well as future opportunities." *Id.* There can be no factual dispute here that Powers did not intend to resign and relinquish his position; according to the stipulated facts, he was immediately rehired and sworn in the day following his retirement, Barbish represented to the council that it was an "administrative change," and Powers has continued to serve in his capacity as fire chief without interruption. It is evident that his retirement related to receiving certain benefits rather than an intent to permanently give up his employment.

{¶29} Local 1536 cites to *Dore* in support of the proposition that a fire chief who resigned could not be reinstated in that position, emphasizing that in *Dore*, a chief who resigned to receive a pension and was subsequently reemployed by city administration as a chief violated R.C. 124.50. We find this case is distinguishable. In *Dore*, the fire chief submitted an unconditional letter of resignation, relinquished the position on a stated date, was on non-payroll status for 24 days, an acting fire chief was appointed, the chief received pension, and he failed to rescind his resignation. *Id.* at ¶ 13-14. In contrast, in the present matter, Powers returned to office the day following his retirement and acted consistently with remaining in the position, rather than the chief in *Dore* who was removed from payroll and opted not to rescind his resignation. As emphasized in *Dore*, intention to resign is necessary to find R.C. 124.50 applicable and that intention is not present here.

{¶30} To the extent that Local 1536 argues the trial court erred by considering intent, it is evident the issue of intent has been taken into consideration in cases such as *Dore* when addressing the issue of resignation. It is a relevant consideration as outlined above. Furthermore, we again emphasize that our review is de novo and our consideration of the

11

legal issues is independent of the reasoning provided by the trial court.

{¶31} For the foregoing reasons, we find there was no vacancy requiring the civil service examination be offered and Powers did not resign such that he was ineligible to be rehired as chief. Local 1356 is not entitled to the declaratory judgment requested since it is inconsistent with the law. There is no right to mandamus relief since Local 1536 has not established "a clear legal right to the requested relief." *State ex rel. Sands v. Culotta*, 165 Ohio St.3d 172, 2021-Ohio-1137, 176 N.E.3d 735, ¶ 11. Similarly, an injunction is not warranted since Local 1536 did not prove that it has "prevailed on the merits." (Citation omitted.) *Novy v. Ferrera*, 11th Dist. Portage No. 2013-P-0063, 2014-Ohio-1776, ¶ 55.

{¶32} The first assignment of error is without merit.

{¶33} In its second assignment of error, Local 1536 argues that the lower court erred in granting judgment on the pleadings in favor of appellees on the issue of punitive damages due to Local 1536's failure to request compensatory damages, arguing that it sought all available relief and is entitled to recovery of damages in a mandamus action where the relator prevails. In the third assignment of error, Local 1536 argues that the lower court erred in finding there was no allegation of bad faith thereby preventing the recovery of attorney's fees.

{¶34} We find the foregoing issues moot. Since there are no merits to the claims raised by Local 1536 and it did not prevail on the mandamus claim nor demonstrate bad faith given that appellees complied with the law, there can be no entitlement to either punitive damages or attorney's fees. *See Butler Cty. Joint Vocational School Dist. Bd. of Edn. v. Andrews*, 12th Dist. Butler No. CA2006-10-245, 2007-Ohio-5896, ¶ 76 ("[W]e have determined that appellant was not entitled to judgment in this case, and he therefore would

12

not be entitled to damages. Accordingly, appellant's assignment of error with regard to the court's decision on the issue of punitive damages is moot.").

{¶35} The second and third assignments of error are without merit.

{¶36} For the foregoing reasons, the judgments of the Lake County Court of Common Pleas, granting partial judgment on the pleadings and summary judgment in favor of respondents-appellees, are affirmed. Costs to be taxed against appellant.


JOHN J. EKLUND, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.


_____


CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶37} At issue in this matter is whether the former incumbent and again current fire chief, who retired, only to be re-hired with benefits the following day, left a vacancy upon his resignation such that the requirements of R.C. 124.48 were triggered. The majority concludes the retirement was not a contemplated, permanent resignation and, as a result, there was never a vacancy for the position of fire chief. I disagree with this position and therefore respectfully dissent.

{¶38} Appellees argue that the process of "retire/rehire" is merely administrative paperwork and is an "administrative retirement" that did not require the city or mayor to follow the civil service promotional procedures contained in R.C. 124.48.

13

Case No. 2021-L-103

**{¶39}** The fundamental purpose of civil service laws and rules is to establish a merit system under which appointments in certain branches of the public service may be based upon demonstrated fitness independent of political considerations and free from discrimination because of political reasons or affiliation, and to protect appointees from such unjust discrimination. *Curtis v. State, ex rel. Morgan*, 108 Ohio St. 292, 296 (1923). The civil service system is accordingly designed to avoid the "traditional spoils system" and provides "a method of fair employee selection and promotion based upon merit and fitness." *McCarter v. Cincinnati*, 3 Ohio App.3d 244, 248 (1st Dist.1981). Hence, appointments and promotions in civil service positions must normally be made pursuant to competitive examination in accordance with the purpose of the Civil Service Act and R.C. 124.48.

> Whenever a vacancy occurs in a promoted rank in a fire department and no eligible list for that rank exists, the appointing authority shall certify the fact to the civil service commission. The civil service commission, within sixty days of the vacancy, shall conduct a competitive promotional examination. After the examination has been held, an eligible list shall be established, and the civil service commission shall certify to the appointing authority the name of the person on the list receiving the highest grade. Upon the certification, the appointing authority shall appoint the person so certified within ten days.
>
> When an eligible list exists and a vacancy occurs in a position for which the list was established, the appointing authority shall certify the fact to the civil service commission. The person standing highest on the list shall be certified to the appointing authority, and that person shall be appointed within ten days. *Id.*

**{¶40}** The majority aptly points out that the term "vacancy" is not defined by statute or the administrative code. Still, courts have concluded that a "vacancy," in a position, for purposes of R.C. Chapter 124, "occurs 'when a position that has been established and occupied becomes vacant by reason of the death, retirement, dismissal, promotion, *or* other permanent absence of the former incumbent.'" (Emphasis added.) *State ex rel. Ohio*

14

*Patrolmen's Benevolent Assn. v. Warren*, 11th Dist. Trumbull No. 2015-T-0017, 2019-Ohio-5046, ¶29, quoting *Mylott v. McKelvey*, 151 Ohio App.3d 673, 676, 2003-Ohio-328, ¶12 (7th Dist.2003).

{¶41} Initially, this definition does not necessarily require a resignation or retirement to be "permanent" for a vacancy to exist. To the contrary, the above definition of vacancy is disjunctive. Simply because the final, open-ended disjunct includes a "permanent absence" does not require the conclusion that each previous disjunct require permanency. While death is clearly permanent and dismissal may be, neither retirement (as demonstrated in this case) nor promotion are necessarily permanent. In this regard, I would interpret "other permanent absence of the former incumbent" to contemplate situations where a former incumbent is incapable of returning to the position due to an incident that rendered him or her permanently incapable of performing the duties the position demands, e.g., an extreme and incapacitating medical event.

{¶42} Regardless of this point, the definition of "vacancy" cited in *OPBA* derives from *McCarter, supra*, a 1981 case issued by the First Appellate District. The court in *McCarter* adopted the definition from "Ballantine's Law Dictionary, 1331 (3 Ed.1969)." The definition advanced in *McCarter* can imply that each of the instances of a "vacancy" listed would require a form of "permanency in departure" from the position held by a former incumbent. Defining "vacancy" in terms of "permanency" (or an incumbent's intention for the retirement or resignation to be permanent) is somewhat arbitrary and, in my estimation, contrary to the purpose of Ohio's Civil Service Act. Significantly, the Supreme Court of Ohio has not weighed in on, let alone applied, this definition.

15

Case No. 2021-L-103

{¶43}  With all due respect to Ballantine's 1969 definition of "vacancy," I propose the manner in which Ohio courts denote the term should be revisited.  Black's Law Dictionary's most recent edition defines the term "vacancy," in relevant part, as:  "The quality, state, or condition of being unoccupied, esp. in reference to an office, post, or piece of property. 2. The time during which an office, post, or piece of property is not occupied. 3. An unoccupied office, post, or piece of property; an empty place. • Although the term sometimes refers to an office or post that is temporarily filled, the more usual reference is to an office or post that is unfilled even temporarily * * * 4. A job opening; a position that has not been filled." *Id.* (11th Ed.2019).  Black's Law Dictionary does not import any conception of "permanency" into the definition of the term "vacancy."  And, in this respect, would seem more consistent with the salutary and egalitarian policies animating Ohio's civil service laws.

{¶44}  Appellees place great emphasis on the chief's intentions vis-à-vis his retirement and the apparent arrangement with the city that he would, the following day, be rehired.  I do not dispute that these intentions and this arrangement were in place.  And the parties do not take issue with the chief's eligibility to receive pension benefits.  Pursuant to R.C. 742.37(C)(2), governing pension benefits and payments, states, in pertinent part "[a] member of the fund who has fifteen or more years of service credit and who voluntarily resigns * * * shall receive an annual pension * * *."  The chief is an ostensible member and he voluntarily resigned from his post.  Statutorily, however, this eligibility for a pension does not permit the city to simply, behind closed doors, pursuant to private agreement, rehire the incumbent who has voluntarily resigned to be eligible for pension benefits.

{¶45}  Pursuant to R.C. 124.50, "[a]ny person holding an office or position under the classified service in a fire department * * * who resigns therefrom, may be reinstated to the

16

rank of firefighter" upon a specific application process. Moreover, upon reinstatement, that person **"shall not receive credit for seniority earned prior to resignation and reinstatement, and shall not be entitled to reinstatement to a position above the rank of regular firefighter * * * regardless of the position the person may have held at the time of resignation**." (Emphasis added.) Adopting the definition of vacancy I propose, which affords greater deference and fidelity to the purpose of civil service laws, would render the procedures utilized by the city in this matter contrary to law. After the retirement, there was a vacancy. The process set forth in R.C. 124.48 was required upon the chief's resignation and retirement. This is not to say the chief could not seek reinstatement, it merely triggered the requirements of R.C. 124.50.

{¶46} Next, during oral argument, the city and the chief argued that no vacancy in the position of fire chief occurred because it was never unoccupied. In other words, notwithstanding the retire/rehire arrangement, there was no separation from the chief's employment. I find this position somewhat disingenuous. Upon his formal retirement, there was an immediate vacancy. That is, to be rehired necessarily implies an existing vacancy which would trigger the statutorily mandated promotional process to fill the retired incumbent's position. Our working concepts of space and time necessitate this conclusion; even if the chief retired for a nanosecond, there was still a legal vacancy and the R.C. 124.48 procedures *must* be observed.

{¶47} I wish to emphasize that my position is based upon a reading of the law which inherently incorporates the ends, purposes, and goals of the relevant legislation. I do not and would not take issue with the chief's laudable service. Moreover, I fully accept the city's assurances that his value to the department (as well as a public servant in general) might

17

warrant him retaining the position from which he retired/resigned. We must follow, however, both the letter and spirit of the law. To this end, I can neither condone nor countenance the procedures employed and the outcome they eventuated. Such procedures were fundamentally contrary to the applicable statutory process.

{¶48} Firefighters and police officers are front-line, first responders. They are not paid large salaries for the risks they take to maintain public safety. Moreover, as public servants, they might easily be unjustly thwarted or illegitimately advanced in their positions through the vagaries of politics, nepotism, or other improper influences. The General Assembly, via enacting the procedures set forth in the civil service code, attempted to avoid or certainly minimize these problems. The civil service promotional process provides a benefit of certainty to the advancement process upon which firefighters and police officers should be able to rely. Although the chief may indeed be the best individual to hold the esteemed post from which he retired, by virtue of his retirement, I am compelled to conclude the mechanisms of R.C. Chapter 124 (in particular R.C. 124.48 and R.C. 124.50) were triggered.

{¶49} I respectfully dissent.

18