**DUNN SPECIALTY STEELS, INC., Appellee,**

v.

**WORLD METALS, INC., Appellant.**

[Cite as *Dunn Specialty Steels, Inc. v. World Metals, Inc.* (1999), 135 Ohio App.3d 367.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19207.

Decided Aug. 18, 1999.

*Colin G. Skinner* and *Mark W. Bernlohr,* for appellant.

*Brian C. Cich* and *Robert E. Soles, Jr.,* for appellee.

CARR, Judge.

Appellant-defendant World Metals, Inc., appeals from a judgment in favor of appellee-plaintiff Dunn Specialty Steels, Inc. ("Dunn"). This Court affirms the judgment of the trial court.

## I

World Metals is a supplier of specialty steels. Dunn is a steel distributor. Dunn purchases specialty steels in bulk from suppliers such as World Metals and resells these steels in smaller quantities to manufacturers who fabricate industrial dies.

In May 1994, Dunn purchased a 3,872 pound bar of air melt steel from World Metals. Dunn immediately began slicing off portions of the steel for sale to its customers. After selling approximately two-thirds of the steel to various customers without incident, Dunn sold a small portion of this steel to B.A. Die Mold ("B.A"). B.A. used this steel to fabricate a die that failed due to a defect in the steel. B.A. was forced to compensate its customer for the defective die and then sought reimbursement from Dunn.

In response to B.A.'s claims, Dunn sent samples of the remaining steel to an independent laboratory to be tested. The tests revealed porosity in parts of the samples.

Dunn satisfied the claims of B.A. and then sought recovery from World Metals for the claims of B.A. and for approximately 1,298 pounds of remaining defective steel. When World Metals refused to compensate Dunn, Dunn filed suit. At trial, Dunn presented the testimony of its president and a former sales manager for World Metals. Dunn's president testified about the transaction with World Metals, the transaction with B.A., and the results of the tests of the remaining steel. Dunn also presented a slice of the remaining steel, which exhibited visible signs of porosity, and the die that was defective. The trial court concluded:

"[T]he Defendant sold the Plaintiff steel, which was defective. The steel has a substantial crack in it, which corresponds to the crack in the mold of the ultimate end user. The crack is clearly visible to the naked eye although it was in the middle of the piece of steel.

"However, the more important issue is whether Dunn Steels may receive damages. One of the recurring problems with trials in this court is lack of evidence. While the Court does not doubt that the Plaintiff paid monies to its clients for a perceived problem with the Defendant's steel, there is simply not enough evidence in this case of the damages and that the defective steel proximately cause [*sic*] the damages. The Court has wrestled with this issue for far too long and ultimately concludes that the Plaintiff has not met its burden of proof on this issue.

"Because the Court finds that Dunn Steels has failed to prove that it is entitled to damages, the Court declines to determine whether Dunn Steels' failure to 'vouch in' World Metals pursuant to R.C. 1302.65(E) prevents it from receiving damages.

"Ultimately, the Court finds in favor of Defendant and against Plaintiff at Plaintiff's costs."

Shortly thereafter, Dunn filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5), arguing that the trial court had failed "to address Plaintiff's actual damages related to the unused portion of the *defective* steel and the testing costs incurred by Plaintiff once the *defects* in the steel were discovered." The trial court granted this motion, stating:

"In the previous Judgment, the court held that the steel purchased by Dunn from World Metals was defective, but that Dunn had failed to prove that the defective steel was the proximate cause of the damages claimed. The Court originally focused on the claim for damages alleged because of payments to the steel's end user. The Motion is granted because the Court did not consider the value of the defective steel itself."

The trial court concluded:

"The Court does find that it did not properly consider the evidence concerning the remaining steel. Plaintiff did prove that a section of the steel was defective

and unusable and is entitled to damages for the unusable steel. The Plaintiff also has the remaining steel worth $1662.50, which it did try to return to the Defendant. The unused steel shall be returned to the Defendant at Defendant's costs and Defendant is to reimburse the Plaintiff for the steel.

"Judgment is entered for the Plaintiff and against the Defendant in the amount of $1662.50 plus interest from the date of this Judgment and court costs. Defendant is to pay the cost to return the steel to its Akron facility."

World Metals appeals the grant of relief from judgment.

## II

World Metals' third assignment of error will be addressed first. It states:

"The trial court erred in granting plaintiff[-]appellee's motion to vacate judgment and denying defendant[-]appellants [*sic*] motion to strike same."

Under this assignment of error, World Metals repeats, without elaboration, the well worn mantra that Civ.R. 60(B)(5) is not to be used as a substitute for an appeal. However, in *State ex rel. Gyurcsik v. Angelotta* (1977), 50 Ohio St.2d 345, 4 O.O.3d 482, 364 N.E.2d 284, the Supreme Court of Ohio looked to the analogous federal rule and found that "[i]t is generally held that court errors and omissions are reasons justifying relief under the 'other reasons' clause [of Civ.R. 60(B) ]." *Id.* at 347, 4 O.O.3d at 483, 364 N.E.2d at 285. In that regard, courts have frequently granted relief from judgment pursuant to Civ.R. 60(B)(5) based on "errors and omissions" similar to the error or omission at issue herein. For instance, in *Bobb v. Marchant* (1984), 14 Ohio St.3d 1, 14 OBR 1, 469 N.E.2d 847, the appellants had petitioned the court of appeals for a writ of prohibition, alleging that Marchant, a trial court judge, lacked the jurisdiction to try a case that was pending before him. The court of appeals dismissed the writ based on the mistaken belief that it was moot because the trial had already taken place. The appellants moved to vacate the appellate court's order of dismissal pursuant to Civ.R. 60(B)(5) and the court of appeals denied the motion. The Supreme Court of Ohio held:

"The court of appeals dismissed the complaint on the ground of mootness. It of course was not moot, because the [trial] was not held. Once this fact was brought to the attention of the court of appeals, it should have granted relief from its earlier dismissal pursuant to the 'other reason' provision of Civ.R. 60(B)(5)." *Id.* at 2, 14 OBR at 2, 469 N.E.2d 847. See, also, *U.A.P. Columbus JV326132 v. Plum* (1986), 27 Ohio App.3d 293, 27 OBR 338, 500 N.E.2d 924 (finding relief proper under Civ.R. 60(B)(5) when a court awards damages for a period of time in which the defendant had clearly mitigated damages by leasing the premises to a new tenant); *Fallang v. Fallang* (Dec. 1, 1997), Butler App. No. CA97–03–043,

unreported, 1997 WL 746059, (relief proper under Civ.R. 60(B)(5) when a court errs in calculating total income by counting rental income twice).

This court in particular has applied Civ.R. 60(B)(5) in similar situations. In *Rowland v. Finkel* (1987), 33 Ohio App.3d 77, 514 N.E.2d 949, the seller in a land sale contract sued the buyer and won. The judgment awarded the seller damages equal to the amount of money still owed under the contract and rescinded the contract, giving the property back to the seller. As such, the trial court awarded the seller a double recovery—the value of the property in addition to possession of the property. The buyer later challenged this judgment by way of a Civ.R. 60(B) motion. The trial court denied the motion as untimely and this court reversed, finding that it may have been a proper situation for relief from judgment. Further, in *Reichert v. Reichert* (1985), 23 Ohio App.3d 67, 23 OBR 112, 491 N.E.2d 376, after judgment had been entered, one of the parties discovered that the trial court had never actually reviewed a medical deposition that had been relied on by both parties. Therefore, the losing party moved for relief from judgment pursuant to Civ.R. 60(B)(5) and the trial court granted the requested relief. This court affirmed, concluding that "it was an injustice for the trial court not to consider the medical deposition which it was obligated to consider." *Id.* at 68, 23 OBR at 113, 491 N.E.2d 376.

Our analysis is further constrained by the "considerable discretion" that is given to a trial court when it decides a Civ.R. 60(B) motion. See *Rowland, supra,* at 79, 514 N.E.2d at 951–952. In the instant case, the trial court exercised its discretion by concluding that it had failed to consider the damages resulting from Dunn's continued possession of the remaining defective steel and by granting the requested relief. After reviewing the judgment entries at issue herein, this court cannot say that such a conclusion was an abuse of discretion. World Metals' third assignment of error is not well taken.

### III

World Metals' second assignment of error states:

"The trial court erred when it accepted testimony as to the identity of the steel in contravention of the physical facts rule."

*McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 71 O.O.2d 4, 326 N.E.2d 252, syllabus, sets forth the "physical facts" rule:

"The testimony of witnesses which is positively contradicted by the established physical facts is of no probative value and a jury will not be permitted to rest a verdict thereon."

The Supreme Court of Ohio described the rule and its various manifestations:

"The rule has been variously stated: *E.g.,* 'the testimony of a witness which is opposed to the laws of nature, or which is clearly in conflict with the principles established by the laws of science, is of no probative value and a jury is not permitted to rest its verdict thereon.'

" 'The testimony of a witness which is positively contradicted by the physical facts cannot be given probative value by the court.'

" 'The palpable untruthfulness' of plaintiff's testimony requiring a trial court to take a case from the jury under the physical facts rule 'must be (1) inherent in the rejected testimony, so that it contradicts itself, or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge, or (3) is obviously inconsistent with, [or] contradicted by, undisputed physical facts.' Each of these formulations strikes a balance between, on the one hand, the common sense notion that physical facts and evidence can be so conclusive and demonstrative that no reasonable person could accept the truth of contrary testimony, and, on the other hand, the need for courts to be wary of treating a party's theory of a case as 'fact,' when a different theory is also possible in the case." (Citations omitted.) *Id.* at 12–13, 71 O.O.2d at 7, 326 N.E.2d 252.

Based on this rule, World Metals argues that the testimony of Dunn's president that the air melt steel purchased from World Metals was defective was of no probative value. World Metals correctly notes that the faulty die that was submitted into evidence by Dunn was stamped as "E.S.R." steel. From this fact, World Metals concludes that the die must have been made from E.S.R. steel, not air melt steel as claimed by Dunn.

However, the mere fact that the die was stamped "E.S.R." does not establish the composition of the die as a physical fact; any type of metal can be stamped "E.S.R." World Metals' president admitted as much on cross-examination:

"Q. You stated earlier, looking at this piece of steel, that 420 ESR is stamped on the back.

"A. Yes.

"Q. Are you aware of who stamped that on the product?

"A. No, I'm not.

"Q. Do you know if that's 420 ESR steel?

"A. No, I don't.

"Q. Is it possible that that could be a mistake on the back of that product?

"A. Anything's possible."

Therefore, the fact that the faulty die was stamped "E.S.R." does not establish as a physical fact that the die was made from E.S.R. steel. World Metals' second assignment of error is not well taken.

## IV

■ World Metals' first assignment of error states:

"The trial court's award of damages to plaintiff–appellee was against the manifest weight of the evidence."

Specifically, World Metals argues that the trial court erred by awarding Dunn damages for all of the remaining air melt steel because Dunn only produced evidence revealing a defect in the small portion of the steel that was admitted at trial.

When asked to review the weight of the evidence in a civil case, an appellate court will only reverse a judgment when it " 'is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.' " *Jacobs v. Benedict* (1973), 39 Ohio App.2d 141, 144, 68 O.O.2d 343, 345, 316 N.E.2d 898, 901, quoting 3 Ohio Jurisprudence 2d (1953) 817, Appellate Review, Section 819.

In the instant case, the president of Dunn testified that he had sent some of the remaining air melt steel to be tested and that the laboratory had found porosity in parts of the tested steel. Additionally, when testifying about the type of defect found, Dunn's president testified that sometimes porosity will continue throughout an entire bar of steel, while sometimes it will only exist in a portion of the steel. Similarly, the former sales manager of World Metals testified that a void such as the one that was visible in the sample piece of steel admitted at trial would generally travel some distance down the bar of steel. World Metals' president testified to the contrary, claiming that the defect visible in the sample was an isolated defect.

From this evidence World Metals claims that Dunn failed to prove that all of the remaining steel was defective. World Metals argues that because the testing laboratory only found defects in parts of some of the steel, not all of the steel was proven to be defective. World Metals buttresses this conclusion with the fact that two-thirds of the bar of steel was sold without any complaints of defects.

However, there was testimony to the effect that porosity generally exists throughout an entire segment of a bar of steel. From this testimony, the trial court could infer that the visible defects in the sample admitted at trial and the defects that were discovered in the samples that were submitted for testing probably exist throughout the remaining bar of steel. As such, the trial court's award of damages was not so manifestly contrary to the natural and reasonable

inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. World Metals' first assignment of error is not well taken.

*Judgment affirmed.*

SLABY and CACIOPPO, JJ., concur.

CACIOPPO, J., retired, of the Ninth District Court of Appeals, sitting by assignment.