STATE ex rel. HRELEC, Appellant,

v.

CITY OF CAMPBELL et al., Appellees.

[Cite as *State ex rel. Hrelec v. Campbell* (2001), 146 Ohio App.3d 112.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99CA207.

Decided Sept. 24, 2001.

*David C. Comstock, Jr.,* and *Margo Stoffel,* for appellant.

*Dennis Haines* and *Barry Lane,* for appellee David Horvath.

*Brian J. Macala,* Director of Law, for appellee city of Campbell.

DeGenaro, Judge.

This timely appeal comes for consideration upon the record and the parties' briefs. Relator-appellant Nick Hrelec ("Hrelec") appeals the trial court's decision refusing to adopt the November 27, 1998 magistrate's decision and denying Hrelec's writ of mandamus. The issues before us are (1) whether the absence of a fire chief due to illness created a vacancy such that the mayor could legally appoint a new permanent fire chief, and (2) whether a private settlement agreement reached by the city of Campbell and the original fire chief has any binding effect on other civil servants in light of the civil service laws of Ohio. For the following reasons, we reverse the judgment of the trial court and order that the promotional examination be given consistent with the findings of the magistrate.

This appeal arises from a complicated procedural history involving several parties, cases, and issues, all which involve the position of fire chief in the city of Campbell. The pertinent facts, stated below, are found in a court-ordered "Stipulation of Facts" jointly filed by the parties on August 27, 1998, in the mandamus action (case No. 97 CV 936), which is the subject of this appeal.

The permanent fire chief of the city of Campbell, Roy Stanfar ("Chief Stanfar"), suffered two heart attacks, the second of which rendered him disabled as of August 19, 1995. After the first heart attack, David Horvath ("Horvath") filed a mandamus action styled *Horvath v. Campbell*, case No. 95 CV 1271, in which the common pleas court issued an order on January 9, 1996, appointing Horvath *temporary* fire chief effective August 19, 1995. This decision was not appealed. In an attempt to fill the alleged vacancy, as Chief Stanfar had still not returned to work, the Mayor of the city of Campbell, George Tablack ("Mayor Tablack"), terminated Chief Stanfar and appointed Horvath as permanent fire chief on March 11, 1996. Chief Stanfar appealed his removal by Mayor Tablack to the Campbell Civil Service Commission ("CSC"). The CSC determined that the removal was improper and illegal as it did not comply with R.C. 124.34, and ordered Chief Stanfar to be reinstated. The city appealed this ruling to the court of common pleas in the case styled *Campbell v. Stanfar*, case No. 96 CV 1200, wherein the magistrate, affirmed by the trial court on December 19, 1996, upheld the CSC's decision. The city filed its notice of appeal with this court on January 21, 1997.

In the meantime, on March 18, 1996, Hrelec filed his first petition for a writ of mandamus with the common pleas court, requesting he be appointed temporary fire chief because Horvath had already served longer than the permissible six months, from August 19, 1995 to February 19, 1996, pursuant to R.C. 124.30(C). *State ex rel. Hrelec v. Campbell*, case No. 96 CV 744. On September 11, 1996,

the trial court, adopting the magistrate's decision, issued its order finding that Hrelec was entitled to a *temporary* six-month appointment effective February 19, 1996. This decision, as was the decision in Horvath's mandamus action, was predicated upon the finding of the magistrate that, because CSC determined that Chief Stanfar's termination was improper, he retained his status as permanent fire chief until the CSC's ruling was vacated or reversed. Neither party appealed this decision, nor did the city appoint Hrelec temporary fire chief as ordered by the court.

Because the eligibility list expired on March 16, 1996, during the course of litigation, Hrelec's counsel wrote to the city, advising that a competitive examination for the position of the fire chief must be given within sixty days in accordance with R.C. 124.30 and 124.48. Having received no response, on February 10, 1997, Hrelec filed a second mandamus action asserting four causes of action against the city and the CSC, the first claim of which requested that the trial court issue a writ compelling the city to give a promotional examination for the position of permanent fire chief, which is the sole issue in this appeal.

The fifth legal proceeding involving the fire chief's position was filed on July 25, 1997, in which Chief Stanfar alleged that the city, by and through its mayor, had attempted to remove him from his position of fire chief in violation of, *inter alia,* civil service laws, and demanded immediate restoration to his position of fire chief. *Stanfar v. Campbell,* case No. 97 CV 2349. On July 28, 1997, the case was dismissed after the parties entered into a settlement agreement, which provided that Stanfar would retire as fire chief and that he would be entitled to disability benefits and workers' compensation benefits, both to be effective retroactive to August 5, 1995. Shortly thereafter, the city likewise dismissed its appeal of case No. 97 CV 1200, which, as noted above, was pending before this court at the time.

On January 27, 1998, in the second mandamus action filed by Hrelec, the trial court issued an order postponing the civil service examination, which it had previously ordered three times and vacated once, and granted Horvath leave to intervene. All parties were then ordered to submit a list of stipulated facts to be considered by the magistrate in order to resolve the then remaining issues in Hrelec's mandamus petition. The magistrate issued a decision on November 12, 1998, which concluded the following:

"(1) Horvath has never been the lawful fire chief;

"(2) Since July 28, 1997, the City has not had a lawful fire chief;

"(3) Since March 16, 1996, the City has not had a certified service eligibility list and has not given a civil service test from which an eligibility list could be made."

The magistrate based these findings upon the stipulations submitted to him by the parties, as well as final and binding judgment entries entered previously by

the common pleas court in other cases filed as a result of the actions taken by the city of Campbell with regard to the position of permanent fire chief. The magistrate concluded that *res judicata* attached to resolution of the issue whether the fire chief's position was vacated as of either August 19, 1995 or March 11, 1996. The magistrate reiterated that Chief Stanfar retained his status as permanent fire chief by virtue of the trial court decisions (1) affirming the CSC decision that he was still the permanent fire chief, and (2) finding that Horvath and then Hrelec were each entitled to temporary appointments. The only question that the magistrate found before him to resolve was whether Chief Stanfar's resignation on July 28, 1997, could be applied retroactively, which he concluded it could not:

"* * * [T]he settlement and the Judgment Entry adopting it are binding upon Stanfar and the city as a resolution of their particular dispute and to the monetary provisions they cover. It cannot, however, serve to bind the public and its members such as the plaintiff Hrelec * * *. A resignation retroactive in effect with the obvious purpose of justifying the monetary arrangements of the parties cannot be used to subvert, bypass, and avoid the application of the civil service laws then existent."

Based upon these findings and the purpose of the civil service scheme, the magistrate concluded that Chief Stanfar's resignation could be applied only prospectively, and as the eligibility list had expired, granted the writ and ordered the CSC to give a promotional examination for the position of fire chief to be administered in accordance with R.C. 124.45. Horvath subsequently filed objections to the magistrate's decision. On July 9, 1999, after reviewing the objections, the trial court refused to adopt the decision of the magistrate, stating only that "David Horvath was duly appointed as permanent Fire Chief on March 11, 1996 and said appointment was pursuant to the then current civil service eligibility list." The trial court made absolutely no findings of fact or conclusions of law to support that decision.

Hrelec asserts in his sole assignment of error:

"The trial court erred when it failed to adopt the magistrate's decision and held that appellee Horvath was duly appointed as permanent fire chief on March 11, 1996 and that the appointment was properly made pursuant to the then current civil service eligibility list."

We reverse the judgment of the trial court because it was an abuse of discretion to deny Hrelec's writ and conclude that Horvath was the duly appointed permanent fire chief. Stanfar's absence did not create a vacancy and his retroactive resignation cannot cure the impropriety of Horvath's appointment. We therefore grant Hrelec's petition for writ of mandamus and order that the

CSC proceed with a promotional examination for the position of permanent fire chief.

 The standard of review for determining whether a court properly granted or denied a writ of mandamus is abuse of discretion. *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914. The same standard of review applies even though Hrelec's petition was initially heard by a magistrate. In accordance with Civ.R. 53, the trial court is required to conduct an independent review of the case, having the "ultimate authority and responsibility over the [magistrate's] findings and rulings." *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 5, 615 N.E.2d 617, and must decide "whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate]." *Inman v. Inman* (1995), 101 Ohio App.3d 115, 118, 655 N.E.2d 199. In light of this discretion, a trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Remner v. Peshek* (Sept. 30, 1999), Mahoning App. No. 97CA98, unreported, 1999 WL 803441. This standard requires more than a determination by the reviewing court that there was an error of judgment, but rather that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*

 Moreover, Hrelec argues as a subissue to his assigned error that the trial court's decision is against the manifest weight of the evidence. In most instances a trial court's decision will be affirmed so long as all the elements of the case are supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. However, in cases where, upon reviewing the evidence, the trial court's decision is so manifestly contrary to the evidence that it constitutes a substantial injustice, this standard of review dictates reversal. *Dunn Specialty Steels, Inc. v. World Metals, Inc.* (1999), 135 Ohio App.3d 367, 734 N.E.2d 391. Therefore, Hrelec will prevail upon appeal if we determine that the trial court abused its discretion by reversing the magistrate's decision finding that Horvath is the permanent fire chief and refusing to order the promotional exam requested in Hrelec's mandamus petition.

Due to the brevity of the judgment entry in this case, it is difficult to discern the basis of the trial court's decision to deny Hrelec's petition. This certainly gives rise to the appearance that the trial court abused its discretion by reversing the magistrate. Consequently, our review is limited to the stipulations of fact that were presented to the magistrate, and whether the magistrate correctly applied the law to those facts, in order to determine whether the court abused its discretion by reversing that decision.

■ Before a court can grant a writ of mandamus, the petitioner must establish (1) a clear legal right to the requested relief, (2), a clear legal duty on the part of respondents to provide this relief, and (3) the lack of an adequate remedy in the ordinary course of law to compel them to perform the requested acts. *State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Tablack* (1999), 86 Ohio St.3d 293, 714 N.E.2d 917. A writ is not granted by right; rather, it is highly prerogative, and its issuance rests in the sound discretion of the court. *Patton v. Springfield Bd. of Edn.* (1988), 40 Ohio St.3d 14, 531 N.E.2d 310. The right to relief sought in mandamus may be lost by a relator due to estoppel, waiver, acquiescence, or laches. *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 718 N.E.2d 415; *State ex rel. Collins v. Pokorny* (1999), 86 Ohio St.3d 70, 711 N.E.2d 683.

■ In the case *sub judice,* the gravamen of Hrelec's appeal is that the city attempted to permanently appoint Horvath to a position that was not vacated, and as the eligibility list has since expired, the city now has a duty to retest and properly fill the position, as the position has now been vacated by virtue of Chief Stanfar's resignation on July 28, 1997. Conversely, Horvath contends that Stanfar's temporary disability did create a vacancy as of August 19, 1995, making his appointment proper. In the alternative, Horvath suggests that Stanfar's retroactive resignation somehow relates back to the time of Horvath's appointment, thus curing the impropriety of his appointment.

Pursuant to R.C. 124.48, when a vacancy occurs in a promoted rank in a fire department, and an eligibility list is in existence, the appointing authority, in this case the mayor, shall certify the fact to the civil service commission. The person standing highest on such list shall be certified to the appointing authority, and such person shall be appointed within ten days. On the other hand, if no such list exists, the mayor shall certify that fact to the civil service commission which shall, within sixty days of such vacancy, conduct a competitive promotional examination to generate an eligibility list.

In the case of interim or temporary appointments made necessary by reason of sickness, disability, or other approved leave of absence of regular officers or employees, such appointment shall continue only during such period of sickness, disability, or other approved leave of absence. R.C. 124.30(A). In these instances, the law provides for the selection of a person on the proper list of those eligible for permanent appointment, for a temporary appointment for a period not to exceed six months. Successive temporary appointments of the same person to the same position are prohibited. R.C. 124.30(C).

We must first resolve once and for all whether a vacancy in the position of fire chief existed when the city attempted to permanently appoint Horvath on March 11, 1996. "Vacancy" is not defined in either R.C. Chapter 124 or the Ohio

Administrative Code, and it is not subject to any technical definition. *State ex rel. Flex v. Gwin* (1969), 20 Ohio St.2d 29, 49 O.O.2d 185, 252 N.E.2d 289. However, the court in *McCarter v. Cincinnati* (1981), 3 Ohio App.3d 244, 247, 3 OBR 276, 444 N.E.2d 1053, held that a "vacancy" in public office occurs when a position that has been established and occupied becomes vacant by reason of the death, retirement, dismissal, promotion, or other permanent absence of the former incumbent.

Horvath contends that the city correctly determined that Stanfar's medical leave created a vacancy in the position of fire chief due to his inability to perform the requisite duties as of August 19, 1995. As noted, the parties stipulated that Stanfar's dismissal was deemed improper by both the CSC and the Mahoning County Court of Common Pleas. The magistrate correctly concluded that *res judicata* barred Horvath's argument here, as Stanfar was the permanent fire chief as of August 19, 1995, as determined by the CSC and affirmed by the common pleas court in case No. 97 CV 1200 on December 19, 1996, which still stands, as that appeal was dismissed. The magistrate correctly concluded that it is also *res judicata* by virtue of the trial court's rulings in case No. 95 CV 1271, wherein Horvath was appointed *temporary* fire chief as of August 19, 1995, and in case No. 96 CV 744, wherein Hrelec received a temporary appointment effective February 19, 1996, both of which were predicated on the fact that Stanfar was still permanent fire chief. Moreover, this proposition is misplaced, as it seems to imply that any civil servant who goes on medical leave has forfeited the right to return to his position. Ohio civil service law states otherwise and provides for the reinstatement upon return of a fireman after injury or resignation. R.C. 124.50.

Horvath alternatively argues that Chief Stanfar's July 28, 1997 resignation, made retroactive to August 19, 1995, cures any defect regarding his appointment. We can only speculate that the trial court concluded that Horvath was properly appointed to the permanent fire chief position based upon the settlement agreement between Stanfar and the city in case No. 97 CV 2349, wherein they agreed that Chief Stanfar was permanently disabled from the start of his absence and would, therefore, retroactively resign. Horvath fails to explain the legal relevancy of this stipulation/settlement agreement. Moreover, we can find no legal precedent for the proposition that a retroactive resignation can cure an improper appointment to a position. Rather, we find authority to the contrary.

A similar set of facts was presented to the Fifth District in *State ex rel. Mathews v. Alliance* (Oct. 31, 1995), Stark App. No. 95CA160 unreported, 1995 WL 768511, where a police lieutenant began his leave of absence on March 2, 1994, and used accumulated disability and sick time while he applied for a

disability pension. The lieutenant did not express an actual desire to leave the force until he was notified of the decision concerning his pension, at which point he tendered his resignation on October 4, 1994. The Fifth District found that because he could have returned to duty following the pension determination, a vacancy was created in the position once the lieutenant submitted his resignation. Based upon the rationale in *McCarter* and *Mathews*, as well as the determination of the CSC, which was affirmed by the trial court, and the determination in both Horvath's and Hrelec's mandamus actions granting them appointments as temporary fire chiefs, we conclude as a matter of law that the position of fire chief was not vacated until Stanfar submitted his resignation on July 28, 1997. Until that date, the city could make only six-month temporary appointments from the then current eligibility list pursuant to R.C. 124.30. The magistrate correctly concluded that Stanfar's resignation was effective the day it was tendered on July 28, 1997.

Turning next to the eligibility list issue, which the court in *Mathews* also addressed, the officers in line for promotion in *Mathews* argued that they should have been promoted from the eligibility list that was still in effect at the time the lieutenant went on leave, notwithstanding the fact that it expired prior to the lieutenant's actual resignation. The court did not agree and ordered that a civil service examination be given before any additional promotions were made. In the instant case, the eligibility list for fire chief expired on March 16, 1996. Stanfar submitted his letter of resignation on July 28, 1997. Based on the court's rationale in, and consistent with, *Mathews*, we conclude that the magistrate was correct in recommending that the CSC give a promotional examination, as the city has not had an eligibility list since March 16, 1996.

In its judgment entry, the trial court failed to set forth any reason for its judgment denying Hrelec's writ and finding that Horvath was properly appointed on March 11, 1996, from the then effective eligibility list. The impropriety of both Stanfar's termination and Horvath's attempted permanent appointment have previously been decided by the CSC and the Mahoning County Court of Common Pleas. Those decisions are *res judicata*, as they were either never appealed or the appeals were dismissed. In making its determination to reject the magistrate's decision, the trial court disregarded the decision of the CSC and the multiple decisions of the Mahoning County Court of Common Pleas. Moreover, the trial court's decision is contrary to the civil service provisions of R.C. Chapter 124 and the rationale in *McCarter* and *Mathews*. Based upon the above, the trial court's decision was against the weight of the evidence and an abuse of discretion.

For the preceding reasons, we find Hrelec's assignment of error to be meritorious. Accordingly, the judgment of the trial court denying Hrelec's petition for writ of mandamus and determining that Horvath is the permanent

fire chief is reversed, and the city of Campbell is ordered to give a promotional examination consistent with Ohio civil service laws and the November 27, 1998 magistrate's decision.

*Judgment reversed
and cause remanded.*

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.