OPINION
{¶ 1} Relator-appellant, Heartland Jockey Club, Ltd. appeals from a judgment of the Franklin County Court of Common Pleas denying its motion for summary judgment and granting the summary judgment motions of respondents-appellees, Horsemen's Benevolent and Protective Association ("HBPA") and Ohio State Racing Commission ("OSRC"). Because the trial court properly determined that relator's application for "special racing event" status under R.C. 3769.089(A)(9) may be granted only for an individual race or individual races in a simulcast program, we affirm.
 {¶ 2} The circumstances underlying this appeal concern appellant's efforts to have simulcast racing programs deemed "special racing events" through requests to HBPA and OSRC pursuant to R.C. 3769.089(E)(3). Specifically, in January 2000, in accordance with R.C. 3769.089(E)(3), Heartland requested HBPA to consent to special event status for entire simulcast race programs from Aqueduct, Gulfstream, Santa Anita and Turfway racetracks because the charge to receive simulcast signals from those racetracks exceeded three percent. Interpreting R.C. 3769.089(A)(9) as requiring that special event status be granted for individual races because of their national significance and popularity, HBPA withheld its consent to appellant's request to grant special event status to an entire program of races. Pursuant to R.C. 3769.089(E)(3), appellant filed an objection with OSRC. Finding HBPA's withholding consent was not without substantial merit, OSRC overruled appellant's objection at OSRC's January 20, 2000 meeting. On February 8, 2000, appellant sought relief in common pleas court by filing a petition for writ of mandamus.
 {¶ 3} Later, in April 2000, pursuant to R.C. 3769.089(E)(3), Heartland requested that HBPA consent to special event status for all races conducted at the Keeneland 2000 Spring Meet, for all races at Churchill Downs commencing on April 29, 2000 through May 6, 2000, and for all races at Hollywood Park from April 28, 2000 through May 6, 2000. HBPA again withheld its consent. Appellant again filed an objection with OSRC pursuant to R.C. 3769.089(E)(3). Finding HBPA's withholding consent was not without substantial merit, OSRC overruled appellant's objection at OSRC's April 28, 2000 meeting. On May 18, 2000, appellant filed another petition for writ of mandamus that, with the exception of the relief requested, was phrased similarly to the petition for mandamus that appellant filed in February 2000.
 {¶ 4} On August 7, 2000, the trial court sua sponte consolidated the two cases and granted HBPA's motion to intervene as a respondent in both cases. All parties moved for summary judgment. On February 14, 2002, the trial court denied appellant's motion for summary judgment and granted OSRC's and HBPA's summary judgment motions. Appellant timely appeals, assigning two errors:
 {¶ 5} "Assignment of Error #1
 {¶ 6} "The trial court erred in granting summary judgment in favor of the respondent-appellee by holding that `special racing event' status must be requested for individual races, rather than for an entire simulcast racing program.
 {¶ 7} "Assignment of Error #2
 {¶ 8} "The trial court erred as a matter of law in holding that the Horsemen's Benevolent and Protective Association did not unreasonably withhold its consent for special racing event status."
 {¶ 9} "To prevail in mandamus, relator must demonstrate that: (1) it has a clear right to the relief requested, (2) respondents are under a clear legal duty to perform the requested act, and (3) relator has no plain and adequate remedy in the ordinary course of the law." State ex rel. Viox Builders, Inc. v. Lancaster (1989), 46 Ohio St.3d 144, 145, citing State ex rel. Westchester Estates, Inc. v. Bacon (1980),61 Ohio St.2d 42. See, also, State ex rel. Boardwalk Shopping Center, Inc. v. Court of Appeals for Cuyahoga Cty. (1990), 56 Ohio St.3d 33, 34, rehearing denied (1991), 57 Ohio St.3d 712. "The writ of mandamus is not granted by right. It is a high prerogative writ, and its issuance rests in the sound discretion of the court." Patton v. Springfield Bd. of Edn. (1988), 40 Ohio St.3d 14, 15. "The standard of review for determining whether a court properly granted or denied a writ of mandamus is abuse of discretion." State ex rel. Hrelec v. Campbell (2001), 146 Ohio App.3d 112,117, citing State ex rel. Ney v. Niehaus (1987), 33 Ohio St.3d 118. See Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448
(abuse of discretion connotes an unreasonable, arbitrary or unconscionable attitude by the court).
 {¶ 10} Here, although appellant has assigned two errors, it contends it presents only one issue in this appeal: "whether R.C. §3769.089(A)(9), defining `special racing event,' addresses only individual races, or whether it addresses the entire racing program for a simulcast racing program." (Appellant Brief, 5.) In essence, appellant asks this court to review the trial court's interpretation and application of R.C. 3769.089(A)(9). "When reviewing whether a trial court correctly interpreted and applied a statute, an appellate court employs the de novo standard as it presents a question of law." Porter v. Porter, Summit App. No. 21040, 2002-Ohio-6038, at ¶ 5. See, also, Heartland Jockey Club, Ltd. v. Ohio State Racing Comm. (2000),137 Ohio App.3d 545, 547.
 {¶ 11} "The polestar of construction and interpretation of statutory language is legislative intention." State ex rel. Francis v. Sours (1944), 143 Ohio St. 120, 124. "Legislative intent must be determined from the language of the statute itself * * * as well as from other matters, see R.C. 1.49. In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used." Cline v. Ohio Bur. of Motor Vehicles (1991),61 Ohio St.3d 93, 97. (Citations omitted.) "If [an] inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly * * *." Provident Bank v. Wood (1973),36 Ohio St.2d 101, 105-106. (Citation omitted.) "A court may interpret a statute only where the words of the statute are ambiguous. * * * Ambiguity exists if the language is susceptible of more than one reasonable interpretation. * * * If a statute is ambiguous, the court, in determining the intent of the General Assembly, may consider several factors, including the object sought to be obtained, the legislative history, and other laws upon the same or similar subjects. R.C. 1.49." State v. Jordan (2000), 89 Ohio St.3d 488, 492. (Citations omitted.)
 {¶ 12} R.C. 3769.089(A)(9) provides as follows:
 {¶ 13} "`Special racing event' means individual races in live racing programs or simulcast racing programs, and simulcast racing programs on special event days under division (C) of this section, conducted at facilities located outside this state for which the track, racing association, or state regulatory agency conducting such races charges a simulcast host a fee for the privilege of receiving a simulcast of such races into this state that is higher than the customary and regular fee charged for simulcast races because of the status or popularity of such races."
 {¶ 14} Appellant contends that under a plain reading of R.C.3769.089(A)(9) a permit holder of "`[s]imulcast racing programs' need not specify individual races in order to receive special event status; rather, the entire simulcast program is to be deemed a `special racing event' if otherwise qualified." (Appellant Brief, 10.) In support, appellant points to the language in the first sentence of R.C.3769.089(A)(9) and asserts that although it defines a "special racing event" as individual races in live racing programs, the statute does not repeat the phrase "individual races" with respect to simulcast races. Accordingly, appellant contends a special racing event includes the entire card of races in a simulcast program.
 {¶ 15} To construe R.C. 3769.089(A)(9) as appellant urges, however, would render superfluous the phrase "and simulcast racing programs on special event days under division (C) of this section" that immediately follows the language appellant notes. The phrase would be unnecessary because, under appellant's proposed interpretation, "special racing event" would already include a simulcast program.
 {¶ 16} Appellant's proposed interpretation thus is impermissible because "[a] basic rule of statutory construction requires that `words in statutes should not be construed to be redundant, nor should any words be ignored.'" D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health,96 Ohio St.3d 250, 2002-Ohio-4172, at ¶ 26, quoting E. Ohio Gas Co. v. Pub. Util. Comm. (1988), 39 Ohio St.3d 295, 299. Moreover, "[s]tatutory language `must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.'" Id. at ¶ 26, quoting State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn. (1917),95 Ohio St. 367, 372-373.
 {¶ 17} As a result, appellant's contention that R.C. 3769.089(A)(9) permits its requests to simulcast an entire program as a "special racing event" is not persuasive. The trial court did not err in concluding "a plain reading of O.R.C. § 3769.089(A)(9) results in the conclusion that a special racing event is an individual race in simulcast racing programs." (Decision, 7.) Appellant's first assignment of error is overruled.
 {¶ 18} In its second assignment of error, appellant reasserts its contention that R.C. 3769.089(A)(9) does not require appellant to specify individual races in a simulcast racing program to receive "special racing event" status. As discussed above, appellant's contention is not persuasive. Additionally, appellant contends that under R.C. 3769.089(E)(3), when HBPA withholds consent on a request such as appellant, HBPA has the burden of proving that a particular racing program does not rise to the status or popularity that warrants special racing event status as required under R.C. 3769.089(A)(9).
 {¶ 19} "It is elementary that the person who asserts an issue has the burden of proving it." McFadden v. Elmer C. Breuer Transp. Co. (1952), 156 Ohio St. 430, 433. Here, R.C. 3769.089(E)(3) requires a permit holder who proposes to simulcast a special racing event to obtain the consent of the horsemen's organization and, if consent is withheld, the permit holder may file an objection with the state racing commission. Under R.C. 3769.089(A)(9), for a simulcast to be deemed a "special racing event" the fee for the privilege of receiving a simulcast must be higher than the customary and regular fee charged for simulcast races because of the status or popularity of the races. See R.C.3769.089(A)(9). Thus, when R.C. 3769.089(E)(3) is read in conjunction with R.C. 3769.089(A)(9), and both are coupled with the fact that a party asserting an issue has the burden of proving it, the result is the permit holder has the burden of proving that an individual race or races within a particular simulcast racing program rises to the status or popularity that warrants special racing event status as required by R.C.3769.089(A)(9).
 {¶ 20} Finally, although in this appeal appellant apparently does not contest the trial court's factual findings in its judgment, the trial court did not abuse its discretion in denying appellant's petitions for writs of mandamus, as appellant failed to carry its burden to demonstrate the customary and regular fee for simulcast races, the fee for an individual race in the proposed "special racing event" simulcast was higher than the customary and regular fee for simulcast races, and the higher fee was based on the status or popularity of the individual race or races.
 {¶ 21} As the trial court correctly noted, "* * * a review of [appellant's] requests for special event status, as set forth in [letters to the HBPA], reveals that [appellant] presented, at best, sparse evidence * * *. [Appellant] made conclusory statements, without any supporting data, regarding the popularity of the tracks. Moreover, [appellant] made no attempt to connect the presumably higher fee to the alleged popularity of the tracks, which is mandated by statute. The mere fact that a track charges more than what is considered customary and regular does not mean it is because of the status or popularity of the races. * * *
 {¶ 22} "Additionally, the transcripts of the [OSRC hearings] disclose that [appellant] failed to present any additional evidence in support of its requests. As such, [appellant] does not have a clear legal right to the relief prayed. Therefore, it cannot be held that either HBPA's denial of [appellant's] request[s] was unreasonable or that Respondent had a clear legal duty to find that the HBPA's denial was without substantial merit." (Decision, 9-10.) Because the evidence before the trial court supports the trial court's conclusions, and those conclusions reveal that appellant failed to carry its burden of proof, the trial court's denial of appellant's petitions for writs of mandamus does not reflect an unreasonable, arbitrary or unconscionable attitude. Heartland's second assignment of error is overruled.
 {¶ 23} Having overruled appellant's two assignments of error, we affirm the judgments of the trial court.
Judgments affirmed.
BOWMAN and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.