[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Warren*, Slip Opinion No. 2020-Ohio-5372.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5372

THE STATE EX REL. OHIO PATROLMEN'S BENEVOLENT ASSOCIATION ET AL., APPELLANTS, *v.* THE CITY OF WARREN ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Warren*, Slip Opinion No. 2020-Ohio-5372.]

*Mandamus—Civil-service law—R.C. 124.44 and 124.37—Police officers' retirements did not create vacancies that needed to be filled under R.C. 124.44 because city had passed authorized-strength ordinance abolishing their positions upon their retirement—R.C. 124.37 does not require demotion or layoff whenever a reduction of authorized strength of a police force has been enacted—Court of appeals' dismissal of petition affirmed.*

(No. 2019-1766—Submitted June 2, 2020—Decided November 25, 2020.)

APPEAL from the Court of Appeals for Trumbull County,

No. 2015-T-0017, 2019-Ohio-5046.

_____

**Per Curiam.**

{¶ 1} Appellants Edward J. Hetmanski, Jeffrey Orth, Benjamin T. Harrell, Michael Merritt, and Martin M. Gargas, who are members of bargaining units represented by appellant Ohio Patrolmen's Benevolent Association, seek a writ of mandamus ordering that the officers be promoted (or allowed to sit for a competitive promotional examination) pursuant to state civil-service law, plus compensatory relief including back pay. Appellees, the city of Warren, the city's director of service and safety, and the city's civil-service commission (collectively, "the city"), declined to offer the officers promotions or exams because the city had passed an authorized-strength ordinance to abolish the positions at issue upon the retirement of their former occupants. Because the relief is sought for the individual officers, we will refer to the association and the individual appellants collectively as "the officers."

{¶ 2} The officers assert that state civil-service statutes prohibit abolishment of upper-rank police positions by attrition, requiring instead that promotions occur upon the retirement of officers in those ranks. In accord with this theory, the officers argue that the city must first promote the individual officers; only after doing so would the city, according to the officers, have the power to abolish the positions at issue.

{¶ 3} The Eleventh District Court of Appeals granted the city's motion for judgment on the pleadings, and the officers have appealed. We now affirm.

## I. BACKGROUND

{¶ 4} The city of Warren's police force is composed of officers holding the following ranks: chief, captain, lieutenant, sergeant, and patrol officer.[1] Under a 1987 authorized-strength ordinance, as amended in 1996, the force consisted of 1 chief, 3 captains, 6 lieutenants, 10 sergeants, and 59 patrol officers.

---

1. The city uses "police officer" to refer to the lowest rank of its police force. For the sake of clarity, we will use the statutory term "patrol officer" for this rank of officer.

{¶ 5} In November 2014, the city passed a new authorized-strength ordinance. The 2014 ordinance prescribed reductions in the upper ranks of the police department "by means of attrition" from three captains to two, from six lieutenants to five, and from ten sergeants to nine.

{¶ 6} In December 2014, a police captain retired, and in January 2015, a police lieutenant retired. Instead of promoting from the next lower rank pursuant to R.C. 124.44, the city deemed the two positions abolished under the 2014 ordinance.

{¶ 7} The officers filed a petition for a writ of mandamus against the city in the Eleventh District Court of Appeals in February 2015. Lieutenant Gargas, who was next in line for promotion to captain at the time the former captain retired, sought his promotion to captain, plus compensatory relief in the form of "benefits, seniority, and/or back pay." Officer Hetmanski likewise sought promotion to sergeant, plus compensatory relief similar to that sought by Gargas. After the filing of this action, Officer Orth was promoted to sergeant on July 14, 2016; he seeks compensatory benefits for the city's failure to timely promote him. Sergeant Merritt seeks the opportunity to sit for an examination to be able to succeed Lieutenant Gargas when Gargas advances to captain. As a result of the promotions of others, Officer Harrell would be next in line for promotion to sergeant.

{¶ 8} The city answered the complaint and filed a motion for judgment on the pleadings. Thereafter, the officers filed a motion for partial summary judgment asking for summary relief on the main legal question: whether abolishment by attrition violates state civil-service law.

{¶ 9} On February 17, 2017, the court of appeals granted partial summary judgment for the officers. The court found that the two retirements created vacancies as a matter of law and that the city had a legal duty to fill the vacancies under R.C. 124.44; at the same time, the court denied the city's motion for judgment

on the pleadings. The court did not address the issues of specific relief, including entitlement to, and amount of, back pay.

**{¶ 10}** The city appealed to this court, but after briefing, we remanded the case for lack of a final, appealable order. 151 Ohio St.3d 1521, 2018-Ohio-557, 91 N.E.3d 754.

**{¶ 11}** On remand, the parties agreed to have the case decided without trial based on stipulations, joint exhibits, and briefing. The case was assigned to a reconstituted three-judge panel, which reached the conclusion opposite to that reached by the original panel. The new panel denied the officers' motion for partial summary judgment, granted the city's motion for judgment on the pleadings, and dismissed the petition. The officers have appealed.[2]

## II. ANALYSIS

**{¶ 12}** In this appeal, we consider the effect of the city's 2014 authorized-strength ordinance in light of two state civil-service statutes as we have applied them in our case law. Article XV, Section 10 of the Ohio Constitution provides that "[a]ppointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations," and it requires the General Assembly to pass laws "providing for the enforcement of this provision." The statutes that we focus on in this appeal, R.C. 124.44 and 124.37, have been enacted pursuant to that mandate. As the city concedes in its brief, "[i]n non-charter cities like Warren, Ohio R.C. 124.44, governs promotions in police departments."

---

2. Pursuant to S.Ct.Prac.R. 17.02(A), the city has filed a motion for oral argument on the grounds that "oral argument may be helpful to this Court in making the correct decision and will allow the Court to ask questions of counsel on any aspect of the case." In evaluating such a motion, we "consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among the courts of appeals." *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 16. Because the city identifies none of these factors, we deny the motion.

{¶ 13} This appeal contests the grant of judgment on the pleadings, presents a stipulated set of facts, and calls solely for the correct interpretation and application of statutes. Accordingly, our standard of review is de novo. *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 13; *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Engineering, Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8. And it is settled that mandamus is an appropriate action for wrongful failure to promote, *State ex rel. Hipp v. N. Canton*, 75 Ohio St.3d 221, 222, 661 N.E.2d 1090 (1996), as well as for back pay and compensatory relief, *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 25.

### A. R.C. 124.44 and 124.37 and the decision on appeal

{¶ 14} The city's 2014 ordinance lists the police-force ranks and the number of positions in each rank. Using the terms "attrition" and "abolishment," the ordinance states that the number of positions "shall continue to be reduced" in the specified ranks. It is undisputed that the ordinance contemplates abolishment of one captain, one lieutenant, and one sergeant position upon the next retirement of an officer of each rank. *See Webster's Ninth New Collegiate Dictionary* 115 (1989) (defining "attrition" as "a reduction in numbers usu. as a result of resignation, retirement, or death").

{¶ 15} R.C. 124.44 governs the promotion of police officers. Two features of this statute, which we will sometimes refer to as the "promotion statute," are crucial in this case. First, "[v]acancies in positions above the rank of patrol officer in a police department shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled." *Id.* Second, when a "vacancy occurs" and no eligibility list has been established, the local civil-service commission has 60 days within which it "shall" hold a competitive promotional examination to establish such a list, so that the promotion can be made from the

list. *Id.* "Vacancy" is not defined for purposes of R.C. 124.44. *See* R.C. 124.01 (setting forth definitions for R.C. Chapter 124).

{¶ 16} R.C. 124.37 addresses removals, reappointments, and demotions in police and fire departments, and we will sometimes refer to it as the "removal statute." Under R.C. 124.37, if an upper-rank position is abolished, its incumbent is demoted to the next lower rank, and so on until the most recently hired patrol officer is laid off.

{¶ 17} In the decision on appeal, the court of appeals concluded that "nothing in [R.C. 124.44 and 124.37] prohibit[s] the City from accomplishing a reduction in force by attrition" and that "attrition is the least disruptive means of all possible methods to reduce the force" inasmuch as "[n]o officer was laid off, and no officer needed to be demoted." 2019-Ohio-5046, ¶ 17. In so holding, the court distinguished the two decisions the officers primarily relied on: *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 496 N.E.2d 912 (1986), and *Zavisin v. Loveland*, 44 Ohio St.3d 158, 541 N.E.2d 1055 (1989).

{¶ 18} The court of appeals found that both of those cases involved the occurrence of a vacancy that triggered R.C. 124.44, requiring a promotion that each city had refused to offer. 2019-Ohio-5046 at ¶ 22, 25, 28. But the court held that unlike those cases, the present case involves "attrition" in the sense of automatic abolishment upon the former officers' retirement, preventing a vacancy from occurring in the first place. *Id.* at ¶ 30, 33. Accordingly, the court reasoned, the promotion statute itself required no promotion from the lower ranks.

{¶ 19} Additionally, the court concluded that R.C. 124.37 did not require any demotions or layoffs because there was no incumbent in each position that was abolished. By contrast, the dissenting judge interpreted R.C. 124.37 as controlling *any* abolishment of a police-force position above the patrol-officer rank, thereby concluding that abolishment by attrition violates the statute. *Id.* at ¶ 41-42 (Wright, P.J., dissenting).

## B. R.C. 124.37 and 124.44 do not prohibit upper-rank positions from being abolished by attrition

{¶ 20} We restate the question before us as follows: May a city council, *without violating R.C. 124.44 and 124.37*, enact an ordinance to reduce a police force by prospectively canceling the legal authorization for certain positions upon the retirement of the incumbents?

{¶ 21} The officers contend that R.C. 124.44 and 124.37 foreclose abolishment through attrition, which is the explicit premise of the city's 2014 ordinance. According to the officers' proposition of law, "[t]he abolishment of a classified civil service position above the rank of patrolm[a]n in the police department for lack of work or funds, or for causes other than those outlined in R.C. 124.34, must be accomplished in conformance with R.C. 124.37."

{¶ 22} In addressing this issue, we find that the following two sentences of R.C. 124.37 are particularly significant:

> When it becomes necessary in a police or fire department, through lack of work or funds, or for causes other than those outlined in [R.C. 124.34, relating to removal for misconduct], to reduce the force in such department, the youngest employee in point of service shall be first laid off. * * * When a position above the rank of patrolman in the police department * * * is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until the youngest person in point of service has been reached, who shall be laid off.

{¶ 23} The officers reason that the statute, by linking a reduction of force to a layoff with the word "shall," requires that any abolishment of an upper-rank police position triggers the demotion-and-layoff procedure. And because there must logically be an "incumbent" in the position in order to demote that person, a retirement must trigger the promotion provision of R.C. 124.44, which requires promotion to the next rank when a "vacancy occurs." On this understanding, vacancies occurred as a matter of state law upon the retirement of the police captain in December 2014 and the police lieutenant in January 2015—and the statute thereby preempted and invalidated the ordinance purporting to abolish the positions upon the retirements.

{¶ 24} The city counters that the difficulty with the officers' interpretation of R.C. 124.44 and 124.37 is that the statutes do not by their plain terms prohibit abolishment by attrition. It notes that "vacancy" is not defined for purposes of R.C. 124.44, let alone defined in a manner helpful to the officers' claims. And in the city's view, the practical result of the officers' reading is that to abolish a position, the appointing authority must engage in the fiction of promoting and then immediately demoting an entire line of employees. Instead, the city contends, R.C. 124.37 does not state that a demotion or layoff must occur whenever there is a legally enacted reduction of the authorized strength of the police force; what R.C. 124.37 does clearly do is state who is to be laid off—but *only if the circumstances make it necessary for a layoff to occur*.

{¶ 25} We think the city's reading of the statute is the better one. To begin, the officers misread the use of the word "shall" in R.C. 124.37. That statute provides, "When it becomes necessary in a police or fire department * * * to reduce the force in such department, the youngest employee in point of service shall be first laid off." The statute does not say that reduction in the force can be accomplished only by layoffs. It merely outlines the order in which layoffs must

occur: the employee with the least amount of service "shall be *first* laid off." (Emphasis added.) *Id*.

{¶ 26} The officers' contention that positions may be abolished only through demotion also reads too much into the statute. The statute says, "When a position above the rank of patrolman in the police department * * * is abolished, *and the incumbent has been permanently appointed, he shall be demoted* to the next lower rank * * *." (Emphasis added.) *Id.* This provision gives further instruction as to the order in which layoffs must take place: rather than direct that the employee whose position was abolished be laid off, the statute provides that demotions should occur down the line until the "youngest employee in point of service" is laid off. Nothing in the statute suggests that the appointing authority may not abolish a position unless it is simultaneously demoting someone from that position. Indeed, a plain reading suggests the opposite: by saying that the statute applies only when both (1) a position has been abolished *and* (2) an incumbent has been appointed, it suggests the possibility of a situation in which a position has been abolished to which no incumbent has been appointed. Thus, by its plain terms, the statute outlines the procedure that must be followed when there is an incumbent in the position being abolished. Nothing in the statute precludes abolishment through the prospective attrition process used here.

### C. *Hungler* and *Zavisin* do not dictate a contrary result

{¶ 27} The officers rely on *Hungler*, 25 Ohio St.3d 338, 496 N.E.2d 912, and *Zavisin*, 44 Ohio St.3d 158, 541 N.E.2d 1055. In those cases, we invalidated attempted abolishments that did not follow R.C. 124.37's demotion/layoff procedure but we did so under circumstances materially different from those presented here. Neither of those decisions addressed an ordinance that abolishes a position through attrition on a prospective basis and therefore prevents a vacancy from occurring. Accordingly, neither decision controls the disposition of this case.

{¶ 28} *Hungler* involved a demotion/repromotion scheme to abolish two lieutenant positions. A lieutenant was set to be promoted to captain, which would have created a vacancy at the lieutenant position. To prevent a promotion to that position, the city abolished a different lieutenant position before the vacancy occurred and demoted the incumbent to sergeant for a day. Then when the lieutenant vacancy came open, the demoted lieutenant was repromoted to the vacant lieutenant spot. The city utilized the same process when a second vacancy occurred in the lieutenant position. The elimination of the two lieutenant positions and repromotion of their incumbents blocked the promotions of the sergeants who had been next in line for promotion to lieutenant.

{¶ 29} We rejected the city's actions on two grounds. First, we credited the trial court's finding that the scheme had not been authorized by the appointing authority. And although the scheme sought to reduce the number of lieutenant positions to 37, it was undisputed that at the relevant time, "the complement of police lieutenants, as authorized by the Cincinnati City Council, was set at thirty-nine." *Hungler* at 339. Second, although the city had demoted a lieutenant to sergeant and had demoted a sergeant to patrol officer, it had not laid off any patrol officers. We therefore determined that the city had not complied with the requirement in R.C. 124.37 that when an upper-level demotion occurs, the demotions must continue down the line until the patrol officer with the least seniority is laid off.

{¶ 30} In *Zavisin*, 44 Ohio St.3d 158, 541 N.E.2d 1055, the retirement of a lieutenant had created a vacancy. Instead of conducting an examination, determining eligibility, and promoting to fill the position, the city of Loveland— acting *after* the retirement but within the 60-day period allowed for conducting an exam—passed an ordinance purporting to abolish the position. *Id*. at 159. Thus, the city's legislative body had acted to abolish the lieutenant position but only after the vacancy had unequivocally occurred pursuant to R.C. 124.44.

{¶ 31} When, as in this appeal, factually distinct cases are cited, we must be "cautious not to pluck a few statements" from them and "apply them overly literally, without remembering their context." *Penrod v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 239, 2007-Ohio-1688, 864 N.E.2d 79, ¶ 26. The present case is not controlled by *Hungler*, because the city council in this case enacted the force-reduction ordinance to deauthorize the positions upon the retirement of the former officers. And the present case is not controlled by *Zavisin*, because, in that case, the legislative deauthorization occurred after the retirement, meaning that the lieutenant position was still authorized and became legally vacant under R.C. 124.44 when the retirement occurred. By contrast, here, the city's ordinance, having already taken effect, disestablished the positions at issue by virtue of the retirements themselves. The result is that the retirements did not create vacancies that needed to be filled under R.C. 124.44.

{¶ 32} The officers contend that our statement in *Zavisin* at 160—"[w]hen a position in a police department has been both established and occupied by appointment, a vacancy in that position automatically occurs upon the retirement of the incumbent"—means that the city's 2014 ordinance cannot as a matter of law prevent the vacancies from occurring. In other words, the officers argue that the ordinance cannot disestablish a position until the promotion has occurred.

{¶ 33} The flaw in this argument is that neither R.C. 124.44 nor R.C. 124.37 demands the recognition of a vacancy in contravention of a local ordinance that has already disestablished the position. Under our case law, a civil-service position can be "vacant" only if it is established by law. *Zavisin*, 44 Ohio St.3d at 160, 541 N.E.2d 105; *accord State ex rel. Pell v. Westlake*, 64 Ohio St.2d 360, 415 N.E.2d 289 (1980) (newly created position was vacant by virtue of ordinance authorizing the position and general appropriation for department). Here, the very purpose of the ordinance at issue lies in deauthorizing a position automatically upon the

retirement of its incumbent. Once the incumbent's position has been validly disestablished, then a vacancy simply does not occur upon his retirement.

{¶ 34} Additionally, the officers cite *State ex rel. Bednar v. N. Canton*, 69 Ohio St.3d 278, 281, 631 N.E.2d 621 (1994), for the proposition that "[b]y itself, an ordinance limiting the force to a certain number of lieutenants does not sufficiently indicate an intent to alter the mandatory appointment procedures set forth in R.C. 124.44." But that case is inapposite because the city officials in *Bednar* did not argue, as the city of Warren does here, that R.C. 124.44 did not require a promotion; instead, the city officials in *Bednar* argued that that city's charter authorized a home-rule refusal to promote that overrode the operation of R.C. 124.44. As the court of appeals had noted in *Bednar*, after one lieutenant retired, the city officials "neither appointed anyone to replace him, *nor [did it] eliminate[ ] that position*." (Emphasis added.) *State ex rel. Bednar v. N. Canton*, 5th Dist. Stark No. CA-9047, 1993 WL 50732, *1 (Jan. 29, 1993). Under those circumstances, R.C. 124.44 did require a promotion. By contrast, the ordinance at issue here clearly aims to eliminate positions by virtue of retirement.

{¶ 35} Accordingly, we reject the officers' argument that *Hungler* and *Zavisin* dictate the disposition of this appeal. We therefore affirm the judgment of the court of appeals.

### III.  CONCLUSION

{¶ 36} For the foregoing reasons, we deny the motion for oral argument and affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FRENCH and FISCHER, JJ. (who both would grant the motion for oral argument).

FRENCH and FISCHER, JJ., would grant the motion for oral argument.

_____

**KENNEDY, J., dissenting.**

{¶ 37} Appellee city of Warren does not have a city charter and therefore must follow state civil-service statutes set forth in R.C. Chapter 124 regarding personnel reductions and promotions in its police force. *See* R.C. 124.40(A). The issue in this case is whether a city may avoid the requirements of R.C. 124.37 and 124.44 by abolishing certain positions through attrition and nonreplacement. Because the plain language of R.C. 124.37 and 124.44 sets forth specific processes to implement a reduction in a police force and to fill vacancies in a police department and because the city failed to follow the statutory processes and thereby violated the seniority rights of the police officers involved in this case, I would reverse the Eleventh District Court of Appeals' judgment granting the city's motion for judgment on the pleadings. Therefore, I dissent.

## BACKGROUND

{¶ 38} On November 25, 2014, the Warren City Council passed ordinance No. 12570/14, an "emergency measure" that repealed ordinance No. 9819/87, which had set the number of personnel in the police department by position. The preamble of ordinance No. 12570/14 says that the director of public service and safety seeks to reorganize the department for efficient operation and to reduce the number of supervisors by abolishing the positions of one captain, one lieutenant, and one sergeant. The preamble then states, "WHEREAS, the abolishment of these position[s] shall occur by attrition." The ordinance sets forth the following revised breakdown of positions: one police chief, three captains, six lieutenants, 10 sergeants, 59 police officers, and 12 communication coordinators. The ordinance adds, "By means of attrition, the number of authorized Captains shall continue to be reduced from three (3) to two (2)[,] * * * the number of authorized Lieutenants shall continue to be reduced from six (6) to five (5)[, and] * * * the number of authorized Sergeants shall continue to be reduced from then (10) to nine (9)." The ordinance does not define "attrition," but as the majority states, the ordinary

meaning is "a reduction in numbers usu. as a result of resignation, retirement, or death," *Webster's Ninth New Collegiate Dictionary* 115 (1989).

{¶ 39} Soon after the passage of the ordinance, a captain and a sergeant resigned, and their positions were not filled. Appellants Edward J. Hetmanski, Jeffrey Orth, Benjamin T. Harrell, Michael Merritt, and Martin M. Gargas missed out on promotions or opportunities to take a promotion examination that would have resulted from the retirement of superiors but for the ordinance. Appellant Ohio Patrolmen's Benevolent Association represents the bargaining units of the officers. Appellants seek a writ of mandamus to put the officers in the positions they would have been promoted to or would have competed for had the city followed the applicable statutory processes.

## ANALYSIS

{¶ 40} Although the city is subject to the civil-service statutes in the Revised Code, including R.C. 124.37 and 124.44, it argues that they do not apply in this case. It claims that those statutes do not apply when a position is abolished through attrition, leaving no vacancy to be filled. The court of appeals upheld the city's failure to follow the statutes, noting that "attrition is the least disruptive means of all possible methods to reduce the force. No officer was laid off, and no officer needed to be demoted. One would think this approach would be welcomed by all the parties involved." 2019-Ohio-5046, ¶ 17. But the city was not free to craft its own supposedly pain-free way to manage personnel in the police department. And a price *was* paid by the police officers who would have advanced to replace the retiring supervisors, even if they had been immediately demoted after being promoted. They lost valuable seniority rights should a position of similar rank become open or be created, and they suffered a loss of income—regardless of how long they remained in the position to which they were promoted—that could reverberate into retirement.

*R.C. 124.37*

{¶ 41} Other cities have attempted in other ways to avoid the dictates of R.C. 124.37, the statutory method of reducing the number of personnel in a police department, and this court has turned back those efforts. Although Warren has tried a different tack, the result should be the same, because R.C. 124.37 provides the sole method of force reduction in police and fire departments in cities without charters or collective-bargaining agreements that address force reduction.

{¶ 42} R.C. 124.37 provides:

> When it becomes necessary in a police or fire department, * * * to reduce the force in such department, the youngest employee in point of service shall be first laid off. * * * When a position above the rank of patrolman in the police department * * * is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until the youngest person in point of service has been reached, who shall be laid off.

{¶ 43} This court has left no doubt that the process prescribed in R.C. 124.37 is the only way for cities to implement force reductions. In *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 343-344, 496 N.E.2d 912 (1986), this court stated,

> The plain words of the statute make clear that where a city decides to abolish a higher ranking police position because of lack of work, there shall be a demotion of the incumbent accompanied by a series of additional demotions in the lower ranks ultimately

resulting in the layoff of the least senior member of the police department.

{¶ 44} The process prescribed by R.C. 124.37 fits within the broader civil-service system, under which stability and predictability are valued. "The purpose of the civil service system is to provide a 'stable framework of public offices upon which a workable civil service system may be constructed' while 'avoiding the traditional spoils system * * * and * * * providing a method of fair employee selection and promotion based upon merit and fitness.' " (Ellipses sic.) *Hungler* at 344, quoting *McCarter v. Cincinnati*, 3 Ohio App.3d 244, 248, 444 N.E.2d 1053 (1st Dist.1981). It is not guaranteed to be the most efficient system; instead, our civil-service statutes represent the give and take of the legislative process, a balancing of interests achieved on a statewide level. It is not the job of reviewing courts to elevate efficiency over the plain language of the statutes. "Under the guise of efficiency, cities could effectively read R.C. 124.37 out of the code." *Id.* at 344, fn. 2.

{¶ 45} In *Hungler*, this court stated that "R.C. 124.37 provided the stable and predictable procedure to be followed when the city decided to abolish the higher ranking police positions for lack of work." *Id*. at 344. We further held that "[t]he abolishment of a classified civil service position above the rank of patrolman in the police department for lack of work or funds, or for causes other than those outlined in R.C. 124.34, must be accomplished in conformance with R.C. 124.37." *Id*.

{¶ 46} In this case, the city announced in ordinance No. 12570/14 that "the Director of Public Service and Safety has deemed it desirable and necessary for reorganization for efficient operation" of the department that certain positions be abolished and that "the abolishment of these position[s] shall occur by attrition." The undeniable purpose of the city's ordinance was to abolish positions. In *Zavisin*

16

*v. Loveland*, 44 Ohio St.3d 158, 161, 541 N.E.2d 1055 (1989), noting this court's statement in *Hungler* regarding the necessity of using R.C. 124.37 to abolish positions above patrolman in a police department, this court stated that "[n]o exceptions or alternative procedures are provided in legislation for this common fact pattern." The declared aim of the ordinance in this case was to reduce the number of positions at supervisory levels; our caselaw and the language of R.C. 124.37 require that to be done through the method set forth in R.C. 124.37.

### R.C. 124.44

{¶ 47} Although at its heart this case is about a reduction in force of the Warren police department, it started with a vacancy. Therefore, R.C. 124.44, which controls the filling of a vacancy in a police department, also applies to this case. "The procedure for promotion provided in R.C. 124.44 is mandatory upon the occurrence of a vacancy in a position above police patrolman, and the vacant position must be filled by appointment before it is abolished pursuant to R.C. 124.37, which presupposes the existence of an incumbent." *Zavisin* at syllabus. R.C. 124.44 provides:

> No positions above the rank of patrol officer in the police department shall be filled by original appointment. Vacancies in positions above the rank of patrol officer in a police department shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled. No position above the rank of patrol officer in a police department shall be filled by any person unless the person has first passed a competitive promotional examination. Promotion shall be by successive ranks insofar as practicable, and no person in a police department shall be promoted to a position in a higher rank who has not served at least twelve months in the next lower rank. * * *

* * *

If a vacancy occurs in a position above the rank of patrol officer in a police department, and there is no eligible list for such rank, the municipal or civil service township civil service commission shall, within sixty days of that vacancy, hold a competitive promotional examination. After the examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person on the list receiving the highest rating. Upon the certification, the appointing officer shall appoint the person so certified within thirty days from the date of the certification. If there is a list, the commission shall, when there is a vacancy, immediately certify the name of the person on the list having the highest rating, and the appointing authority shall appoint that person within thirty days from the date of the certification.

### We should apply the plain language of R.C. 124.37 and 124.44 to this case

{¶ 48} When Timothy Roberts retired as a captain on December 28, 2014, Lieutenant Martin Gargas was the only person eligible for promotion to the vacant position. But the city argues that immediately upon Roberts's retirement, the position was abolished. The actual language of the ordinance is: "By means of attrition, the number of authorized Captains shall continue to be reduced from three (3) to two (2) * * *." The city has provided no details in the ordinance or in its brief regarding the exact mechanics of how the abolition of a position occurs while someone still occupies it or why once that incumbent leaves, his or her position does not become vacant, at least for a brief time. "When a position in a police department has been both established and occupied by appointment, a vacancy in

18

that position automatically occurs upon the retirement of the incumbent." *Zavisin* at 160.

{¶ 49} In *Zavisin*, this court held that a city could not declare a position abolished once it had become vacant; the city had attempted to abolish the position after the incumbent had retired and before the expiration of the 60-day period the city had to administer a civil-service examination to find a replacement. The city attempted to abolish the position 54 days after the incumbent's retirement. That is a situation different from the one here, but that does not change the fact that a vacancy in a position occurs immediately upon the retirement of the incumbent.

{¶ 50} Ordinance No. 12570/14 does not identify a time when abolishment of the specified positions would occur; the preamble says simply that abolishment "shall occur by attrition." That is, by the common definition, each reduction in force would occur through retirement, resignation, or death. Was the city attempting the same method of reduction as the city in *Zavisin*? The majority and the court below inappropriately have given the city the benefit of the doubt by creating some nether time between a retirement and a vacancy when abolishment supposedly occurs. But because the city makes no clear statement of when abolishment occurs, this court can make no conclusion that the city effectively carried out the abolishment of the positions at issue. It is not this court's role to figure out the mechanism for achieving the city's attempted end-run around the civil-service system. The ordinance itself expresses no more than an aspiration.

{¶ 51} The city seems to seek to create a wedge in time between an incumbency and a vacancy in which its own ordinance would reside to control personnel disposition. There is no such notch in time. R.C. 124.37 covers a reduction in personnel when an incumbent occupies a position; R.C. 124.44 applies when a vacancy is created. There is no space between the incumbent's retirement and the creation of a vacancy during which abolishment of a position can occur. Once there is a vacancy, R.C. 124.44 takes effect. "The procedure for promotion

provided in R.C. 124.44 is mandatory upon the occurrence of a vacancy in a position above police patrolman, and the vacant position must be filled by appointment before it is abolished pursuant to R.C. 124.37, which presupposes the existence of an incumbent." *Zavisin*, 44 Ohio St.3d 158, 541 N.E.2d 1055, at syllabus. The city could not abolish Captain Roberts's position while he was still in it without employing the process set forth in R.C. 124.37, so the city sought to eliminate the position when it became vacant. But a vacancy must be filled through R.C. 124.44.

{¶ 52} In support of our decision in *Zavisin*, this court cited *State ex rel. Barnes v. Kirsch*, 1st Dist. Butler App. No. CA78-0700064 (Sept. 19, 1979). In *Barnes*, due to budget restrictions, the city manager of Hamilton instituted an attrition policy by which reductions in the city workforce would be achieved by not filling vacancies as they arose. The policy provided, "The interpretation of the present attrition policy is that the authorized employee complement is automatically reduced whenever a vacancy occurs in a position. This is automatic and no further action or written communication is necessary." But the First District Court of Appeals held that the fact that a position was abolished whenever a vacancy occurred was inconsistent with R.C. 124.48, a statute similar to R.C. 124.44 but dealing with firefighters. The court held that once a vacancy occurred, the city manager was required to fill it even though he had the power to abolish the position immediately after making the appointment to fill it. That is, there could be no automatic abolishment of a position upon retirement, because the retirement created a vacancy.

{¶ 53} In a subsequent decision, the First District explained *Barnes* as follows:

> The basis of our decision was that the statute prevails over a municipal policy. Under the written policy, a vacancy resulted in

> the position ceasing to exist. Under R.C. 124.48, a vacancy resulted in an appointment of the top man on the eligible list. We held that the statute must control, pursuant to the city's charter, and that there could be no "automatic" attrition.

*McCarter*, 3 Ohio App.3d at 247, 444 N.E.2d 1053, fn. 5. Similarly, here, the retirements created vacancies that must be filled through the process prescribed by R.C. 124.44. The ordinance does not say that abolishment of the positions is automatic upon retirement, but even if it did, it would contradict R.C. 124.44 and would be ineffective. The city's October 6, 2010 "Civil Service Rules and Regulations" itself states that "[w]henever the Municipal Rules are in conflict with the Civil Service Laws of the State of Ohio, the State rules shall take precedence."

{¶ 54} Regardless, the aim of the city's ordinance can be achieved through the use of R.C. 124.44 and 124.37. Through a process of promotion upon retirement, followed by the demotion of the person promoted, the supervisory positions can be abolished without a reduction in personnel beyond the person who had retired. In the end, attrition can be the catalyst for the abolishment of a position—but without negating the seniority rights of the person elevated to the position before it is abolished. As this court pointed out in *Zavisin*, R.C. 124.37 protects the seniority rights of police officers demoted because of a force reduction:

> [A]n officer permanently appointed to [a] vacant position pursuant to R.C. 124.44, whose position is later abolished in conformance with R.C. 124.37, resulting in his demotion, has the right to be reappointed to that position should it be recreated within three years or should another vacancy occur within three years of his demotion due to the abolishment of the position.

44 Ohio St.3d at 161-162, 541 N.E.2d 1055.

{¶ 55} The right to reappointment is a valuable right protected by the statute. Even if the officer were demoted from the position briefly after having been promoted, he or she would have a right to that position if it were to reopen in the following three years. But the majority's construction of the statute results in the loss of those rights by a would-be successor to the position abolished by attrition. As in *Hungler*, the city here "adversely affected appellants' seniority rights by delaying or denying their promotions. In essence, the city, by abolishing these positions in an unlawful manner, was tinkering with the civil service promotional system [under R.C. 124.44] as well as R.C. 124.37," *Hungler*, 25 Ohio St.3d at 344, 496 N.E.2d 912.

{¶ 56} If the city were to employ those two statutes, fill the vacancies under R.C. 124.44, then demote the promoted individuals pursuant to R.C. 123.37 to achieve the position distribution set forth in the ordinance, the new position levels would be achieved without any permanent loss of employment by anyone not retiring from the police force. That is, in the end, the city would end up at the staffing levels it set forth in the ordinance without firing anyone, essentially allowing attrition to control the total number on the force and the individuals at supervisory levels.

### The city's policy thwarts state civil-service law

{¶ 57} R.C. 124.37 provides a stable and predictable process to be followed when cities decide to abolish higher ranking police positions for lack of work. *See Hungler* at 344. "The results of adherence to this procedure, layoffs, may be harsh in some instances, but [police officers] must accept those consequences and plan accordingly and only insist that the city play by the same rule." *Id.* R.C. 124.44 provides a consistent process for the filling of vacancies without favoritism. Here, the city announced the policy of position removal by attrition, and within six weeks, two police officers in positions mentioned in the ordinance just happened to retire.

This coincidence indicates an attempt by the city to avoid the predictable and orderly statutory processes for filling vacancies and reducing force levels. And this was not without consequences for the officers involved in this case: the city's action nullifies their important reappointment rights set forth in R.C. 124.37.

{¶ 58} Further, position abolishment done prospectively by attrition removes the appointing authority from what can sometimes be a difficult job; it can reduce the force from afar rather than having to deal with the process of demoting actual incumbents. It leaves open the possibility of manipulation, to avoid the promotion of a particular person by prospectively abolishing the position before the position is ripe to be filled. On balance, it plunges personnel decisions into darkness, contrary to our civil-service laws, which are designed to keep personnel decisions above board and appointing authorities answerable for their decisions.

## CONCLUSION

{¶ 59} For the foregoing reasons, I would reverse the judgment of the court of appeals and grant the writ sought by appellants. Lieutenant Gargas should be promoted to captain. Because the promotion of Gargas to captain would create a vacancy in the lieutenant position and the city did not have an eligibility list for that position at the time, the city should be ordered to hold a promotional examination for that position. The retirement of Sergeant John Burzynski created a vacancy for sergeant, for which Officer Hetmanski was first in line for promotion; Hetmanski should be promoted to sergeant. The promotion of one sergeant to lieutenant would create another opening at the sergeant level, and that position should be filled by the person next in line for promotion, Officer Orth. Because Orth was already promoted to sergeant in the interim on July 14, 2016, he would be due back pay for the time between that date and the date when he should have been promoted. I would remand the matter to the court of appeals for it to determine the amount of back pay due to the individual appellants.

{¶ 60} Accordingly, I dissent.

FRENCH and FISCHER, JJ., concur in the foregoing opinion.

_____

Daniel J. Leffler and Danielle M. Chaffin, for appellants.

Mazanec, Raskin & Ryder Co., L.P.A., Todd M. Raskin, Frank H. Scialdone, and David M. Smith, for appellees.

_____